OPINION OF THE COURT
Eileen Bransten, J.
Pursuant to CPLR 2308 (a), defendants New York City Health and Hospitals Corporation (HHC) and Dr. Miguel Figueroa (collectively, the moving defendants) move by order to show cause for an order compelling plaintiff Francis Giannicos, as guardian of the person and property of Peter Giannicos, an incapacitated person, to comply with their subpoenas dated October 4, 2004. Plaintiff cross-moves to quash these subpoenas.
Background
In this medical malpractice action — commenced July 20, 2001 — plaintiff claims that defendants negligently treated Mr. Giannicos for hydrocephalus, a condition causing an excessive accumulation of fluid resulting in the enlargement and atrophy of the brain. (Moving defendants’ affirmation in support of order to show cause [affirmation] at 2.) The cause of action is against HHC, a government entity. (Id.) HHC claimed that plaintiff failed to file a timely notice of claim pursuant to General Municipal Law § 50-e (5). (Affirmation at 3.) As a result, on January 4, 2004, defendants moved to dismiss plaintiff’s complaint. (Id.) This court granted defendants’ motion to dismiss with respect to Mr. Giannicos’s wife, Georgia Giannicos, but held in abeyance the motion to dismiss as against Mr. Giannicos pending the determination of whether he qualified for an insanity toll to the statute of limitations under CPLR 208. (Id.) The basis of the toll was to ascertain Mr. Giannicos’s capacity at the commencement of this action and thereafter. (Id.) He was scheduled to appear on January 6, 2005 before a special referee for a hearing regarding his mental competency. (Affirmation at 2.)
The moving defendants now move to compel plaintiff’s attorneys, Argyropoulos & Bender, to testify at that hearing pursuant to subpoenas dated October 4, 2004. (Affirmation at 3.) They also move to compel plaintiffs attorneys to produce all of the writings, forms, documents or records that memorialize conversations between Mr. Giannicos and his attorneys. (Affirmation at 4.) They argue that by signing a retainer and discussing the merits of his case, Mr. Giannicos demonstrated his competency to his attorneys. (Id.)
*405 Plaintiff opposes this motion and cross-moves to quash the subpoenas, arguing that the information is privileged under CPLR 4503 and 3101, and that his attorneys cannot be compelled to testify against him. (Plaintiffs affirmation in opposition [opposition] 1Í 2.) Plaintiff states that the documents were created with and for him, and therefore, are exempt from disclosure as attorney work product. (Opposition 1i 3.) He also argues that the moving defendants are making this motion with the ultimate improper purpose of attempting to have his attorneys disqualified. (Opposition 1112.)
Analysis
CPLR 3101 (a) mandates that there “shall be full disclosure of all matter material and necessary in the prosecution or defense of an action.” The Court of Appeals has explained that the words “material and necessary” are to be liberally construed “to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity.” (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968].) Thus, the CPLR “requires the disclosure of all evidence relevant to the case and all information reasonably calculated to lead to relevant evidence.” (See, Siegel, NY Prac § 344, at 525 [3d ed 1999].) Nonetheless, the court has discretion to limit disclosure and issue a protective order to prevent “unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice.” (CPLR 3103 [a]; Pomeranz v Pomeranz, 99 AD2d 407 [1st Dept 1984]; Byck v Byck, 294 AD2d 456, 457 [2d Dept 2002].)
Furthermore, CPLR 3101 (b) provides that upon “objection by a person entitled to assert [a] privilege, privileged matter shall not be obtainable.” In Spectrum Sys. Intl. Corp. v Chemical Bank (78 NY2d 371, 377 [1991]), the Court of Appeals determined that “the burden of establishing any right to protection [from disclosure] is on the party asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity.” (See also, New York Times Newspaper Div. of N.Y. Times Co. v Lehrer McGovern Bovis, 300 AD2d 169, 171 [1st Dept 2002].)
Work Product
To defeat this motion, plaintiff must first prove that the subpoenaed documents are protected by the attorney work product privilege as “uniquely the product ... of a lawyer’s learning and professional skills.” (Aetna Cas. & Sur. Co. v *406 Certain Underwriters at Lloyd’s, 263 AD2d 367, 368 [1st Dept 1999]; see, CPLR 3101 [e].) Notes and memoranda made by a lawyer during the interview of a witness or client constitute attorney work product and are “absolutely exempt from discovery.” (Siemens Solar Indus. v Atlantic Richfield Co., 246 AD2d 476, 476 [1st Dept 1998].)
Here, the moving defendants are asking for the writings and documents of plaintiffs attorneys that memorialize conversations with Mr. Giannicos. (Opposition 1Í 4.) These documents fall squarely within the attorney work product privilege because they contain the impressions and conclusions of Mr. Giannicos’s attorneys and reflect confidential communications. Therefore, the moving defendants’ motion to compel production of these documents is denied.
Attorney-Client Privilege and Public Policy
Although the attorney work product privilege protects plaintiffs attorneys’ written materials, it does not protect their observations and oral communications. To protect from disclosure details regarding attorney-client conversations and counsel’s unnoted observations of Mr. Giannicos’s competency, Mr. Giannicos must prove that the attorney-client privilege applies and that the subpoenaed conversations and materials were “confidential communications . . . made . . . for the purpose of obtaining legal advice and directed to an attorney who [was] consulted for that purpose.” (New York Times Newspaper Div. of N.Y. Times Co. v Lehrer McGovern Bovis, 300 AD2d at 171 [internal quotation marks omitted]; see also Matter of Priest v Hennessy, 51 NY2d 62, 69 [1980]; CPLR 4503 [a].)
An attorney’s observations of a client’s demeanor, physical characteristics and mental capacity are not protected by the attorney-client privilege, however, because any member of the public could make these observations. (People v Kinder, 126 AD2d 60, 63 [4th Dept 1987], lv denied 70 NY2d 649 [1987]; Fodelmesi v Schepperly, 1990 WL 89320, 1990 US Dist LEXIS 7530 [SD NY, June 20, 1990] [applying New York law]; see, 1 McCormick, Evidence § 89 [5th ed 2003].) Therefore, the attorney-client privilege will not protect plaintiffs attorneys from having to reveal their observations about Mr. Giannicos’s competency and demeanor.
Nonetheless, public policy mandates that they not be compelled to testify. Discussion of this principle — that attorneys should not be compelled to testify against their clients — primarily arises in the context of depositions, most likely because the *407 practice of calling opposing counsel as a witness at trial is so offensive to our conception of the adversarial process. Courts have made clear that attorneys should, only in rare and special circumstances, be forced to testify against their own clients.
In Shelton v American Motors Corp. (805 F2d 1323 [8th Cir 1986]), the Eight Circuit Court of Appeals concluded that defense counsel could not be deposed by plaintiffs counsel. The court explained that “[t]he practice of forcing trial counsel to testify as a witness . . . has long been discouraged . . . [I]t causes the standards of the profession [to] suffer.” (Id. at 1327 [internal citations and quotation marks omitted].)
Similarly, in Harriston v Chicago Tribune Co. (134 FRD 232 [ND Ill 1990]), the District Court of the Northern District of Illinois stated, “courts have not looked with favor upon attempts to depose opposing counsel. The practice is disruptive of the adversarial process and lowers the standards of the legal profession.” (Id. at 233 [internal quotation marks omitted].)
Likewise, in West Peninsular Title Co. v Palm Beach County (132 FRD 301 [SD Fla 1990]), the court held that “depositions of attorneys inherently constitute an invitation to harass the attorney and parties, and to disrupt and delay the case.” (Id. at 302.)
In Kaiser v Mutual Life Ins. Co. of N.Y. (161 FRD 378 [SD Ind 1994]), the court articulated that “depositions [of opposing counsel] may lead to the disqualification of counsel who may be called as witnesses . . . [and] would have a chilling effect on the truthfulness of attorney-client communications.” (Id. at 381.)
Moreover, in Dunkin’ Donuts, Inc. v Mandorico, Inc. (181 FRD 208 [D PR 1998]), the court held that “deposing an opponent’s attorney is a drastic measure and is infrequently proper.” (Id. at 209.)
To address the problem, the Eighth Circuit in Shelton developed a three-prong test, all prongs of which must be satisfied before a party will be permitted to depose opposing counsel. Significantly, a party must establish that: “(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.” (Shelton v American Motors Corp., 805 F2d at 1327 [internal citations omitted].) This test was then adopted in several other circuits. (See, e.g., Dunkin’ Donuts, Inc. v Mandorico, Inc., 181 FRD at 210 [D PR]; Alcon Labs., Inc. v Pharmacia Corp., 225 F *408 Supp 2d 340, 342 [SD NY 2002]; M & R Amusements Corp. v Blair, 142 FRD 304, 305-306 [ND Ill 1992]; American Cas. Co. of Reading, Pa. v Krieger, 160 FRD 582, 586 [SD Cal 1995]; West Peninsular Title Co. v Palm Beach County, 132 FRD at 302 [SD Fla 1990]; Madanes v Madanes, 199 FRD 135, 151 [SD NY 2001]; United States Fid. & Guar. Co. v Braspetro Oil Servs. Co., 2000 WL 1253262, *1-2, 2000 US Dist LEXIS 12669, *6-8 [SD NY, Sept. 1, 2000]; Bogan v Northwestern Mut. Life Ins. Co., 152 FRD 9, 14 [SD NY 1993].)
Here, pursuant to CPLR 3103 (a), this court has discretion to issue a protective order “denying, limiting, conditioning or regulating the use of any disclosure device ... to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice.” (Pomeranz v Pomeranz, 99 AD2d 407 [1st Dept 1984]; Byck v Byck, 294 AD2d 456, 457 [2d Dept 2002].) Thus, it will apply the Shelton test, which is well accepted, in furtherance of sound public policy.
The moving defendants’ failure to satisfy the Shelton test requires denial of their motion. To begin, the moving defendants have several other means from which to obtain the information requested. For example, Mr. Giannicos’s daughter, Francis Giannicos, testified extensively at her deposition about her father’s functional abilities and mental capacities. (Plaintiff’s reply [reply] 1113.) Indeed, Ms. Giannicos is likely in the best position to evaluate her father’s mental condition because she lived with him continuously throughout the period in question. (Id.) Furthermore, the moving defendants have in their possession Mr. Giannicos’s medical records, which include the observations of his treating physician, Dr. Paul Lerner and Dr. Emanuel Lambrakis. (Reply 1Í18.) Again, these physicians had more contact with Mr. Giannicos during the period in question than his attorneys did, and are likely in a better position to testify to Mr. Giannicos’s mental capacity than are plaintiff’s counsel. The moving defendants have not yet exhausted these resources. “The rule requires exhaustion of all other reasonable alternatives before a party should seek to depose his opponent’s attorney.” (M & R Amusements Corp. v Blair, 142 FRD at 306.)
The moving defendants’ requests also fail to meet prong three of the Shelton test because the information sought is not crucial. To defend their case, the moving defendants must demonstrate that Mr. Giannicos is not eligible for the insanity toll to the notice of claim period because he was competent at the time of and after the malpractice.
*409 General Municipal Law § 50-e (1) requires that a notice of claim be served on a public corporation within 90 days after the cause of action arises. Section 50-e (5) further authorizes a court, “in its discretion” to extend the time to serve a notice of claim. The extension, however, “shall not exceed the time limited for the commencement of an action by the claimant against the public corporation.” (General Municipal Law § 50-e [5].) Thus, a court generally has discretion to grant a motion to serve a late notice of claim provided that it is made within the one-year and 90-day statute of limitations. (See, General Municipal Law § 50-i [action against public corporation must be commenced “within one year and ninety days after the happening of the event upon which the claim is based”].)
The one-year and 90-day limitation period prescribed by the General Municipal Law is subject to a toll for insanity for the period of the disability. (General Municipal Law § 50-e [5].) “If a person entitled to commence an action is under a disability ... at the time the cause of action accrues, . . . the time shall be extended by the period of disability.” (CPLR 208; see also, Matter of Butler v Town of Ramapo, 242 AD2d 570, 571 [2d Dept 1997] [applying CPLR 208 to notice of claim].) As a result, a person eligible for the insanity toll under CPLR 208 has one year and 90 days from the time he attains sanity to file a notice of claim.
In this case, therefore, Mr. Giannicos must prove that he was mentally incapacitated from the time of the medical malpractice — 1999—until at least October 2002 (one year and 90 days before he moved to file a late notice of claim). The test is not whether he ever attained lucidity during that period, it is whether, generally, he was “unable to protect [his] legal rights because of an over-all inability to function in society.” (Barnes v County of Onondaga, 65 NY2d 664, 665 [1985]; McCarthy v Volkswagen of Am., 55 NY2d 543 [1982]; Jessamy v Parkmed Assoc., 306 AD2d 34, 35 [1st Dept 2003]; see also, Matter of Eberhard v Elmira City School Dist., 6 AD3d 971, 973 [3d Dept 2004]; Rosenfeld v Schlecker, 5 AD3d 461 [2d Dept 2004]; Butler v Town of Ramapo, 242 AD2d at 571.) Indeed, even if Mr. Giannicos had a window of lucidity when he met with his attorneys or generally communicated to them the facts of his malpractice case, that would not necessarily defeat his claim.
Furthermore, if plaintiffs attorneys are compelled to testify against their client, defendants may then attempt to disqualify them under the advocate-witness rule. The rule, codified at *410 Code of Professional Responsibility DR 5-102 (22 NYCRR 1200.21), prohibits a lawyer “from representing [a] client in pending litigation when he . . . ought to be called as a witness.” (Matter of Levinson, 11 AD3d 826, 828 [3d Dept 2004]; see also Price v Price, 289 AD2d 11, 12 [1st Dept 2001].) This court will not create a situation in which plaintiff is forced to obtain new counsel after being represented by the same attorneys for three years.
Finally, the cases in which attorneys have been compelled to testify against their clients in competency hearings are plainly distinguishable. For example, in People v Kinder (126 AD2d 60 [4th Dept 1987], lv denied 70 NY2d 649 [1987]), the Appellate Division compelled defendant’s attorney to testify at his client’s competency reconstruction hearing. (Id. at 62.) Kinder — a criminal case — involved application of a very different competency test, explicitly inquiring about the defendant’s ability to consult with counsel and understand the proceedings against him. (Id. at 64.) Clearly, defense counsel in Kinder was in the best, and perhaps only, position to determine satisfaction of that test, which is itself based on the attorney-client relationship. Also, the attorney in Kinder was forced to testify posttrial — after he completed the representation of his client.
This case, by contrast, is a civil case involving an insanity toll to the statute of limitations. The test for competency does not inherently require examination of the attorney-client relationship and simply focuses on the ability of Mr. Giannicos to protect his legal rights because of an overall inability to function in society — a completely different standard. (McCarthy v Volkswagen of Am., 55 NY2d at 543.) Here, moreover, the moving defendants are asking this court to compel plaintiffs attorneys to testify in a hearing before trial — subjecting themselves to potential disqualification. As a result, Kinder and like cases are inapplicable.
In the end, public policy mandates denial of this motion. The moving defendants will not be permitted to compel plaintiffs attorneys to testify in a competency hearing because it would undermine the essence of the adversarial process and the client-attorney relationship. Moreover, the moving defendants have not proved that the testimony of plaintiffs attorneys is necessary, crucial or only available through these means. This court must exercise its discretion under CPLR 3103 to limit prejudice and unfair disadvantage. As such, the moving defendants’ *411 subpoenas must be quashed and plaintiffs attorneys will not be compelled to testify at Mr. Giannicos’s competency hearing.
Accordingly, it is ordered that the moving defendants’ motion to compel is denied; and it is further ordered that plaintiffs motion for a protective order is granted.