OPINION OF THE COURT
Rita M. Mella, S.
On the return date of this motion to quash a subpoena, the court directed plaintiff Hana Nina Stevens to provide for in camera review documents she withheld from disclosure as privileged, including correspondence between her and her attorney, A.R.G., Esq.[1] These documents have now been submitted in camera, and they relate to invoices from the Shafrazi Art Gallery for four works of art, ownership of which is *920 contested in this action transferred from Supreme Court. Stevens claims that decedent, Patrick Heiniger, her long-term romantic partner, gifted these works of art to her after purchasing them. Decedent died in Monaco, but his ancillary fiduciaries in New York claim that these artworks belong to his estate. Also in controversy in this transferred action is the ownership of the shares of defendant Hodet Corp., which owns a New York condominium. The ownership of a New York bank account and the contents of the condominium are also in dispute.
The motion currently before the court seeks to quash a subpoena served by the defendants on A.R.G., who is one of the attorneys representing Stevens in this matter, and the issuance of a protective order. Claiming that the crime-fraud exception applies in this instance to the attorney-client communication privilege (CPLR 4503 [a] [1]) and the privilege for work product prepared in anticipation of litigation (CPLR 3101 [d] [2]),[2] defendants seek to depose A.R.G. and to obtain from him correspondence with Stevens and with other attorneys representing her.
These privileges may give way to an adversary’s need for discovery when they “involve [ ] client communications that may have been in furtherance of a fraudulent scheme, an alleged breach of fiduciary duty or an accusation of some other wrongful conduct” (Utico Cas. Co. v Wilson, Elser, Moskowitz, Edelman & Dicker, 1 AD3d 223, 224 [1st Dept 2003] [citations omitted]).[3] The allegations here are not of a crime, but rather a species of wrongdoing.
Defendants have submitted evidence that certain invoices regarding the sale of four disputed artworks were modified or revised after decedent’s death,[4] and that these were given by Stevens to A.R.G., who then provided them to defendants’ *921 counsel. Although identically dated and referring to the same works of art, two sets of four invoices have been provided in support of the discovery sought in the subject subpoena. One set lists plaintiff’s name alone. Of the other set, decedent’s name is listed on two, decedent’s and plaintiff’s names are listed on another, and Rolex (the company for which decedent was chief executive officer)* **[5]6 is listed on the fourth. A.R.G., it appears, upon receipt of the set of invoices listing only Stevens’s name, prepared bills of sale and an affidavit for approval by the gallery through which the artwork was obtained.[6]
While ordinarily attorney-client communications and the attorney’s work product would be shielded from disclosure, the documents submitted for in camera review provide adequate reason to apply the exception to the privilege rules. The communications contained in them are probative on the question of whether the invoices, which may be relevant to the issues regarding ownership of the art, may have been fraudulently or wrongfully modified and whether there was any wrongdoing intended. As necessary to establish the crime-fraud exception, there is a factual basis for “probable cause to believe that” the communications involved possible client wrongdoing and that the communications with the attorney in question may have been in furtherance of such wrongdoing (Matter of Grand Jury Subpoena, 1 AD3d 172, 173 [1st Dept 2003] [backdated documents] [Nowlin]). As in Nowlin, the fact that the party’s attorney may have been unaware of such possible modification or revisions does not prohibit discovery from that attorney under this exception. “The pertinent intent is that of the client, not the attorney” (In re Omnicom Group, Inc. Sec. Litig., 233 FRD 400, 404 [SD NY 2006]).
Yet, as also noted in Nowlin, the exception applies only to the matter about which there is probable cause to believe a fraud or wrongdoing has been committed (1 AD3d at 172 *922 [examination permitted as to claimed backdated documents, but not other medical records]). Consequently, only documents regarding the invoices, the bills of sale and affidavit—and all the documents submitted for in camera review do, in fact, relate to them—should be disclosed to defendants under the crime-fraud exception.
However, defendants have not made a sufficient showing to allow an examination of A.R.G., their opposing counsel. They have not satisfied their burden under the three-prong test outlined in Shelton v American Motors Corp. (805 F2d 1323 [8th Cir 1986]), which was cited with approval in Matter of Cavallo (20 Misc 3d 219 [Sur Ct, Richmond County 2008], resettled order affd 66 AD3d 675 [2d Dept 2009]). The Shelton analysis requires a showing that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case (Shelton, 805 F2d at 1327).
Here, defendants are aware of what can be called the “duplicate invoices” and have received substantial discovery to date regarding that issue. As a result of this decision, they will now receive attorney-client communications in the form of the documents submitted in camera. They have also deposed plaintiff, and in a separate decision resolving additional discovery motions of the parties, the court is permitting a continuation of her deposition to allow her to be questioned regarding the in camera documents, the invoices, the bills of sale and affidavit, and her communications with A.R.G. regarding them. Defendants have obtained the information they seek through other means, and, under the circumstances, the questioning of A.R.G. at a deposition has not been shown by defendants to be “crucial” to their defense (see Joseph B. Cooper & Son v Finlay Depts., 11 Misc 2d 382, 386 [Sup Ct, NY County 1958]; Giannicos v Bellevue Hosp. Med. Ctr., 7 Misc 3d 403 [Sup Ct, NY County 2005]; cf. Art Capital Group LLC v Rose, 54 AD3d 276 [1st Dept 2008]).
Consequently, the motion to quash (CPLR 2304) and for a protective order (CPLR 3103 [a]) is granted in part and denied in part by directing the disclosure to defendants within seven days of the date of this order of the documents submitted in camera, but prohibiting any further discovery from respondent nonparty A.R.G.
The court notes as a final matter that this decision is not a determination that fraud or wrongdoing was committed, but *923 only that defendants have met their burden of establishing probable cause under the standard for determining that this exception to the asserted privileges applies regarding the documents submitted in camera.

. This court had found on the record on April 10, 2015 that the “lesser evidentiary showing . . . needed to trigger in camera review” under the crime-fraud exception to the attorney-client privilege was made out here (see Matter of New York City Asbestos Litig., 109 AD3d 7, 11 [1st Dept 2013], citing United States v Zolin, 491 US 554, 572 [1989]). That showing is “ ‘of a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies’ ” (id., quoting Zolin). “ ‘Once that showing is made, the decision whether to engage in in camera review [of the evidence] rests in the sound discretion of the . . . court’ ” (id., quoting Zolin).

. The privilege log provided for the documents submitted for in camera review indicates that the documents were generated in anticipation of litigation, and the court’s review revealed that they do not contain counsel’s impressions, analysis and trial strategy, which are generally considered attorney work product.

. Of course, only communications regarding a future or ongoing fraud or wrongdoing may lose the protection of privilege under this exception, not communications seeking or conveying attorney advice regarding past or completed acts (see In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F2d 1032, 1041 [2d Cir 1984]).

. The motion was filed at the beginning of the discovery process, and the court adjourned it to permit other discovery to be completed from Stevens and from the gallery at which the artworks were obtained to ensure that inquiry of plaintiff’s cocounsel would, in fact, be necessary. That discovery *921 has concluded. Stevens at her deposition denied that she had requested the gallery modify or revise the invoices, but certain witnesses deposed from the art gallery appear to contradict Stevens’s statements.

. Rolex has confirmed that it makes no claim of ownership to the work of art in this invoice.

. The gallery owner did not sign the affidavit or approve the bills of sale prepared by A.R.G. or his firm that were based on the invoices provided to him by Stevens. Correspondence between A.R.G. and the gallery was the subject of a separate decision relating to an assertion of attorney work product privileges (Stevens v Cahill [Patrick Heiniger], NYLJ, Feb. 27, 2015 at 22, col 3 [Sur Ct, NY County, Feb. 24, 2015]).