OPINION OF THE COURT
Betty Owen Stinson, J.
In this action for alleged legal malpractice, defendant moves seeking a pretrial hearing to determine whether plaintiff William Simmons (Simmons) is and has been insane since October 22, 1997 — the date of his stroke — such that pursuant to CPLR 208, he could have been entitled to toll the statute of limitations on the medical malpractice claim upon which this action *600 is premised. Defendant also seeks an order pursuant to CPLR 3124, compelling Simmons to appear for a deposition, compelling Simmons’ counsel to appear for a deposition, and compelling Simmons to comply with defendant’s discovery demand dated March 13, 2014. Simmons opposes the instant motion, in part. To the extent that defendant seeks a pretrial hearing, Simmons contends that the same is unwarranted since the issue of Simmons’ insanity is an element of his substantive claim for legal malpractice, which, summary judgment having been denied, can only be resolved at trial. With respect to having Simmons appear for a deposition, he opposes the instant motion on grounds that he is not competent to testify. Simmons also opposes having a deposition of his attorney on grounds that it is irrevelant. To the extent that defendant seeks to compel compliance with its discovery request, Simmons contends that he provided adequate responses, providing substantially all documents requested.
For the reasons that follow hereinafter, defendant’s motion is granted, in part.
The instant action is for alleged legal malpractice. Simmons’ complaint alleges the following: On October 22, 1997, Simmons while a patient at North Central Bronx Hospital (NCBH) was subjected to medical malpractice; said malpractice causing permanent brain damage. In 1999, Lynda Dufresne-Simmons (Dufresne), Simmons’ wife, retained defendant to initiate and prosecute a medical malpractice claim against NCBH for the treatment received by Simmons. On April 20, 2000, defendant, concluding that the applicable statute of limitations on any claim against NCBH had run, never served a notice of claim upon NCBH, and instead, filed suit on Simmons and Dufresne’s behalf against Montefiore Medical Center (MMC) and Howard Crystal, MD (Crystal). The foregoing action was, thereafter, dismissed on grounds that MMC had not provided any treatment to Simmons and that Crystal, as an employee of NCBH, could only be sued if he was served with a timely notice of claim. The action against Crystal was also dismissed because as an employee of NCBH, a municipal hospital, the statute of limitations for Simmons and Dufresne’s claims against him were governed the same truncated statute of limitations governing any claims against NCBH — namely, General Municipal Law § 50-i — which by the time Crystal was sued, had already run. On October 16, 2005, with new counsel, Simmons and Dufresne served NCBH with a notice of claim for the medical practice alleged and two days later initiated an action *601 against it. That action was dismissed on grounds that insofar as the action against Crystal had been dismissed as barred by the applicable statute of limitations, the action against NCBH was also barred by res judicata. Based on the foregoing, Simmons and Dufresne allege that the failure to investigate and determine whether Simmons was insane within the meaning of CPLR 208 so as to toll the applicable statute of limitations against Crystal and NCBH was tantamount to legal malpractice and that but for that malpractice, Simmons and Dufresne would have been successful in an action for medical malpractice against Crystal and NCBH.
Pretrial Hearing
Defendant’s motion seeking a pretrial hearing to determine whether Simmons is and has been insane within the meaning of CPLR 208 since October 22, 1997 is hereby denied. Significantly, defendant actually seeks a trial confined to the issue of Simmons’ insanity, asserting that resolution of that issue in its favor would warrant dismissal of this action. While the foregoing may very well be true, whether Simmons was insane so as to have tolled the applicable statute of limitations under CPLR 208 is a substantive element of the claim for legal malpractice, the resolution of which falls squarely within the ambit of his claim.
Preliminarily, the court notes that a decision on this issue is not precluded by the law of the case doctrine. The law of the case doctrine generally bars the re-litigation of a prior prejudgment judicial determination made within the same action (People v Evans, 94 NY2d 499, 502 [2000]). Judges of coordinate jurisdiction are, thus, prohibited from entertaining or deciding previously decided matters (id. at 504; Gee Tai Chong Realty Corp. v GA Ins. Co. of N.Y., 283 AD2d 295, 296 [1st Dept 2001] [“Once a point is decided within a case, the doctrine of the law of the case makes it binding not only on the parties, but on all other judges of coordinate jurisdiction. While the adoption of the Individual Assignment System has greatly attenuated reliance upon the doctrine, where an application on an issue is directed to different justices, the finality to be ascribed to the prior ruling becomes a paramount consideration” (citations and internal quotation marks omitted)]). Here, while it is true that on January 8, 2013 Justice Suarez denied defendant’s motion to reargue his prior order denying defendant summary judgment, the court’s decision did not mention, let alone address, *602 whether defendant was entitled to a hearing on the issue of Simmons’ insanity. Notably, the issue of a hearing to determine Simmons’ insanity, if any, was also never discussed by Justice Suarez in his decision denying summary judgment dated September 19, 2012. The fact that defendant sought reargument by relying on cases requiring a hearing on the issue of Simmons’ insanity is irrevelant since the court never expressly noted the same.
Defendant’s reliance on cases where the issue of a plaintiff’s insanity for purposes of the toll prescribed by CPLR 208 was litigated in a separate pretrial hearing does not avail it. Generally whether a plaintiff is insane for purposes of tolling the applicable statute of limitations is resolved via a hearing (McCarthy v Volkswagen of Am., 55 NY2d 543, 546 [1982] [court held hearing to determine whether plaintiff was insane so as to warrant the tolling of the applicable statute of limitations pursuant to CPLR 208]; Giannicos v Bellevue Hosp. Med. Ctr., 42 AD3d 379, 379-380 [1st Dept 2007] [“The record contains substantial support for the Special Referee’s finding that the incapacitated person is unable to protect his legal rights because of an over-all inability to function in society as a result of suffering a stroke, and was therefore entitled to the insanity toll of CPLR 208” (citation, brackets and internal quotation marks omitted)]; Santana v Union Hosp. of Bronx, 300 AD2d 56, 58 [1st Dept 2002] [“Thus, a hearing is appropriate to determine plaintiff’s medical condition in November 1997”]). However, a reading of prevailing case law indicates that such hearings are warranted when expiration of the statute of limitations presents a bar to the prosecution of an action, such that whether the same is tolled must be determined separately and at the outset (see McCarthy at 547-548 [Court of Appeals determined, based on testimony presented at a hearing, that plaintiff’s action was time-barred, that he was not insane, and, therefore, not entitled to the toll promulgated by CPLR 208]; Santana at 58 [Court reversed motion court’s order dismissing suit as time-barred, remanding action for a hearing to determine whether plaintiff was insane and, therefore, entitled to a toll of the applicable statute of limitations]; Giannicos at 379-380 [court found that the incapacitated person was entitled to the insanity toll prescribed by CPLR 208, and for leave to serve a late notice of claim]).
Accordingly, here, where defendant seeks a hearing not to determine whether Simmons is entitled to the insanity toll *603 prescribed by CPLR 208 in relation to the statute of limitations in this action, the foregoing cases do not mandate a hearing. Indeed, defendant seeks a hearing to determine whether Simmons was insane in 1997 and in the several years thereafter in an effort to exonerate itself from its alleged failure to avoid dismissal of Simmons’ prior action for medical malpractice.
Nor is defendant entitled to a pretrial hearing to determine Simmons’ insanity merely because it could obviate further proceedings in this action.
CPLR 603 states, in pertinent part, that “[i]n furtherance of convenience or to avoid prejudice the court . . . may order a separate trial of any claim, or of any separate issue. The court may order the trial of any claim or issue prior to the trial of the others.” While the decision to grant a trial or a hearing rests within the court’s discretion, “[s]uch discretion is soundly exercised where the separate trial involves an issue which does not touch upon the merits of the main controversy but will, nevertheless, be dispositive of the entire action” (Morford v Sulka & Co., 79 AD2d 502, 502 [1st Dept 1980]). Stated differently, separate trials are appropriate when a trial on ancillary issues may dispose of the entire controversy without delving into the merits of the actual controversy (id. at 503). In Morford, plaintiff sued for breach of his employment contract because he was terminated without cause, allegedly in violation of the terms of the contract (id. at 502). During discovery, defendant learned that plaintiff misrepresented his qualifications, thereby fraudulently inducing defendant to hire him (id.). Defendant therein sought a separate trial on the issue of fraudulent inducement, which the court granted (id.). Plaintiff appealed and in reversing the trial court’s decision, the Appellate Division held that a separate trial on fraud necessarily involved the merits of plaintiff’s substantive claim, thereby precluding a separate trial on that issue (id. at 503). Conversely, in Mirabella v Banco Indus. de la República Argentina (29 AD2d 940 [1st Dept 1968]), where plaintiff sued for breach of contract after defendant allegedly cancelled six letters of credit issued to plaintiff’s assignor, the Court held that a separate trial on plaintiff’s claim for fraud and defendant’s statute of limitations defense was warranted because the issue of fraud did not bear on plaintiff’s claim for breach of contract and the proof in the former would not be the same as the proof on the latter (id. at 940). Moreover, the Court held that a separate trial was warranted because resolution of the defendant’s *604 statute of limitations defense “if disposed of favorably to the defendant, would end this long-standing litigation” (id. at 940). Similarly, in Mihalchik v Schepis Constr. Co. (8 AD2d 618 [2d Dept 1959]), an action involving a motor vehicle accident, defendant sought a separate trial on the issue of permissive use— whether the driver had defendant’s permission to operate the vehicle at the time of the accident alleged (id. at 619). In granting a separate trial on that issue the Court held that
“[t]he circumstances disclosed in the record indicate that trial of the issue in question would be relatively short, that trial of all the other issues would probably be protracted, that trial of the other issues, if indeed not obviated entirely by the determination to be made upon a trial of the said issue in question, would not require presentation of the same evidence that would be relevant on the said issue, and that there is substantial merit to appellant’s position on this issue” (id. at 619).
Here, insofar as Simmons’ action is for legal malpractice, before he can litigate the issue of defendant’s negligent representation and any liability stemming therefrom, he must first demonstrate the hypothetical favorable outcome of the underlying action from which the claim of malpractice stems (Lindenman v Kreitzer, 7 AD3d 30, 34 [1st Dept 2004]; Zarin v Reid & Priest, 184 AD2d 385, 386 [1st Dept 1992]). However, whether Simmons was insane at the time defendant represented him, thereby requiring defendant to take appropriate action to toll the applicable statute of limitations, is the essential element of his claim for legal malpractice. Accordingly, the hearing sought is denied because it seeks to resolve an issue not merely ancillary, but the crux of Simmons’ claim for legal malpractice (Morford at 502-503).
Simmons’ Deposition
Defendant’s motion seeking an order compelling Simmons to appear for a deposition is granted to the extent of compelling Simmons to appear for a preliminary examination by the court to determine whether he is competent to testify.
It is well settled that parties to an action generally possess information material and necessary to the prosecution or defense of an action such that they are required to submit to depositions (CPLR 3102 [a]; 3106 [a]). When, however, a witness’s competency to testify is made an issue, it is within *605 the court’s discretion to determine whether the witness possesses the requisite capacity. As the Court in Fritsch v Central Trust Co. (262 App Div 551, 552 [4th Dept 1941]) aptly stated,
“[a] court may permit an incompetent person to give testimony if the court is satisfied that the incompetent has sufficient mental ability to understand the obligation of an oath and to know the relationship and the significance of the facts concerning which he is to be examined and to accurately describe these facts. The court, however, should never grant leave to examine an incompetent, capable of being produced in court, until he has satisfied himself, after a preliminary examination of the incompetent, that he is of sufficient mental ability to give testimony.”
Thus, notwithstanding a party’s right to depose another, when a witness’s or party’s competency is called into question, the court should conduct a preliminary examination to determine whether the witness or party sought to be deposed is competent to testify (id.; Regina v Day, 186 AD2d 119, 119 [2d Dept 1992]; Almy v Pappas, 134 AD2d 946 [4th Dept 1987]; Muscoreil v Pool Mart, 107 AD2d 1025 [4th Dept 1985]; Tuohy v Gaudio, 87 AD2d 610, 611 [2d Dept 1982]; Jensen v Shady Pines, 32 AD2d 648, 648 [2d Dept 1969]; Bruder v State of New York, 24 AD2d 691, 692 [3d Dept 1965]; Shine v Sonastone Realty Corp., 22 AD2d 706, 707 [2d Dept 1964]). Significantly,
“[t]he question of an incompetent’s mental stability should not be determined upon affidavits. Until such a preliminary examination has been had and the court has passed upon the question of an incompetent’s mental stability, the court is not in a position to pass upon the merits of a motion to examine an incompetent as to specified matters” (.Fritsch at 552).
Here, in opposing defendant’s motion to compel his deposition, Simmons submits several medical reports, all of which establish that Simmons is not competent to testify at a deposition. Significantly, within his affirmation, Stephen J. Thompson, a neurologist, opines, based on his review of records, that Simmons “is incompetent to provide sworn and unsworn testimony at a deposition . . . [because he] is incapable of understanding and accurately answering questions in the structured format of a deposition.” Compelling as the foregoing might be, however, whether Simmons is competent and able to *606 be deposed is a decision this court must make after an in-person hearing.
Counsel’s Deposition
Defendant’s motion to depose those attorneys who personally dealt with and observed Simmons when they were initially retained is denied. A review of the record establishes that any testimony provided would not be probative on the issue of Simmons’ insanity at the time defendant is alleged to have committed legal malpractice. As such, any testimony would be ir-revelant.
While there is no absolute proscription on requiring a party’s counsel to submit to depositions while a case is still pending, the practice is nonetheless frowned upon. To be sure,
“Making the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney’s testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client’s case without fear of being interrogated by his or her opponent. Moreover, the ‘chilling effect’ that such practice will have on the truthful communications from the client to the attorney is obvious” (Shelton v American Motors Corp., 805 F2d 1323, 1327 [8th Cir 1986]; see Q.C. v L.C., 47 Misc 3d 600, 602 [Sup Ct, Westchester County 2015] [“there is a reluctance upon the courts to require a party’s attorney to submit to a deposition, as the practice is disruptive of the adversarial process and lowers the standards of the legal profession”]; Giannicos v Bellevue Hosp. Med. Ctr., 7 Misc 3d 403, 406-407 [Sup Ct, NY County 2005] [“Courts have made clear that attorneys should, only in rare and special circumstances, be forced to testify against their own clients”]).
Thus, generally an attorney should only be compelled to testify at a deposition when the proponent establishes that (1) no other means exist to obtain the information than to depose op *607 posing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case (Shelton at 1327; Q.C. at 602; Giannicos at 407).
Here, defendant seeks to depose Simmons’ counsel, specifically any counsel who had the opportunity to observe him in 2005, when Simmons retained the same, contending that any testimony regarding their observations of Simmons bears on whether he was, in fact, insane. Whether Simmons was insane is, of course, germane to the instant malpractice claim. Nevertheless, defendant’s claim, is meritless. Significantly, any testimony would necessarily be confined to observations of Simmons in 2005, when the legal representation by his then and current counsel began. Thus, such testimony would have no bearing on whether Simmons was insane at the time defendant represented him and initiated the instant action in 2000 or in 2003 and 2004, when the underlying medical malpractice action was dismissed, because defendant allegedly failed to invoke the toll provided by CPLR 208. Accordingly, because the testimony sought is irrevelant it is not, inter alia, crucial to the defense of the instant action, as required by case law (Shelton at 1327; Q.C. at 602; Giannicos at 407).
Document Discovery
Defendant’s motion seeking to compel Simmons to comply with its discovery demand dated March 13, 2014 is granted to the extent of compelling Simmons to provide an authorization to obtain his driving records and records from Old Hook Medical Associated and Watson Clinic.
CPLR 3124 allows a court to compel disclosure “[i]f a person fails to respond to or comply with any request, notice, interrogatory, demand, question or order.” Thus, when a party responds to discovery demands but provides inadequate responses, the proper remedy is a motion to compel pursuant to CPLR 3124 as opposed to a motion to strike or preclude pursuant to CPLR 3126 (Double Fortune Prop. Invs. Corp. v Gordon, 55 AD3d 406, 407 [1st Dept 2008] [“Plaintiff having responded to defendant’s discovery requests, the proper course for defendant, rather than moving to strike the complaint pursuant to CPLR 3126, was first to move to compel further discovery pursuant to CPLR 3124”]). It is well settled, however, that a party cannot be compelled to produce documents it does not have (Hawley v Hasgo Power Equip. Sales, 269 AD2d 804, 804 [4th Dept 2000]), nor can it be compelled to produce a wit *608 ness over whom it exercises no control (Placede v City of New York, 210 AD2d 18, 19 [1st Dept 1994]).
Here, a review of the record demonstrates that, with the exception of authorizations allowing defendant to obtain Simmons’ driving records and medical records from two facilities, Simmons fully responded to defendant’s discovery demand, providing almost all documents requested to the extent he possessed them. To the extent that defendant is unhappy with the breadth of the adoption records provided, asserting that additional records must exist, defendant provides no evidence to support its assertion. Again a party cannot be compelled to produce documents it does not have (Hawley at 804). To the extent that defendant contends that it has not received records of any neurological testing undergone by Simmons, the response to such demand evinces that authorizations to obtain the same would be provided. Thus, as with the authorization allowing defendant to obtain Simmons’ driving records he must also provide authorizations allowing defendant to obtain his records from Old Hook Medical Associated and Watson Clinic. It is hereby ordered that Simmons appear for a hearing to determine his competency to testify at a deposition on June 30, 2016, at 11 a.m. at the Supreme Court, Bronx County, room 701. It is further ordered that Simmons provide defendant with authorizations to obtain his driving records from the appropriate Department of Motor Vehicles and his medical records from Old Hook Medical Associated and Watson Clinic within 30 days of service of this order with notice of entry.