Liberty Petroleum Realty, LLC v Gulf Oil, L.P. (2018 NY Slip Op 05624)





Liberty Petroleum Realty, LLC v Gulf Oil, L.P.


2018 NY Slip Op 05624


Decided on August 2, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 2, 2018

Richter, J.P., Gesmer, Oing, Singh, Moulton, JJ.


6450N 22163/15E

[*1] Liberty Petroleum Realty, LLC, et al., Plaintiffs-Appellants,
v
Gulf Oil, L.P., et al., Defendants-Respondents.


Harfenist Kraut & Perlstein, LLP, Lake Success (Neil Torczyner of counsel), for appellants.
Steven Cohn, P.C., Carle Place (Jeffrey H. Weinberger of counsel), for respondents.



Order, Supreme Court, Bronx County (Laura G. Douglas, J.), entered July 11, 2017, which, to the extent appealed from as limited by the briefs, denied plaintiffs' motion to strike defendants' answer for their failure to respond completely to plaintiffs' discovery demands, and granted defendants' cross motion to quash the subpoena served upon defendants' counsel, unanimously modified, on the law, to grant the cross motion only to the extent that the subpoena sought documents, and remand to the motion court for further proceedings consistent with this order regarding the deposition of defendants' counsel, and otherwise affirmed, without costs.
Factual and Procedural Background
Plaintiffs are two distributors of wholesale motor fuel to gas stations. Defendant Cumberland Farms, Inc. (Cumberland) is the parent company for defendant Gulf Oil, L.P. (Gulf), a seller of wholesale motor fuel. Defendant Anjon of Greenlawn, Inc. (Anjon) is a licensed distributor of Gulf fuel.
Plaintiffs seek damages for tortious interference with contract as a result of defendants' alleged role in the rebranding of five nonparty franchises (the stations) from Mobil to Gulf. In 2008, each of the stations entered into a separate franchise agreement for a period of eight years with nonparty ExxonMobil Oil Corporation (Mobil). Pursuant to assignment agreements executed in 2010, Mobil conveyed its interest in each of the franchise agreements to one of the two plaintiffs in this action, which thereafter supplied the stations with Mobil fuel.
On July 5, 2011, the stations commenced an action in Queens County Supreme Court against the plaintiffs in this action entitled Go Green Realty Corp. et al. v Liberty Petroleum Realty, LLC et al., alleging fuel pricing irregularities. That action was removed to federal court on August 1, 2011, and by order dated March 30, 2015, the District Court granted summary judgment dismissing the stations' complaint and scheduled a trial on the counterclaims for violation of the franchise agreements and liquidated damages (Go Green Realty Corp. V Liberty Petroleum Realty LLC, 86 UCC Rep Serv 2d 256 [SD NY 2015], affd 645 Fed Appx 105 [2d Cir 2016]). Defendants in that action (plaintiffs in this action) ultimately prevailed on their counterclaims, and recovered liquidated damages and counsel fees due under the franchise agreements. Counsel for defendants in this action represented the stations in the Go Green litigation.
On April 17, 2015, plaintiffs commenced this action, in which they allege that, in or about April 2012, defendants entered into negotiations with the stations to supply Gulf fuel to them, and that, approximately one month later, the stations ceased buying Mobil fuel from plaintiffs, rebranded themselves from Mobil to Gulf stations, and began selling Gulf fuel purchased from Anjon. Plaintiffs allege that defendants' actions constitute tortious interference with the franchise agreements.
On November 3, 2016, plaintiffs served a subpoena on defendants' counsel seeking [*2]documents and deposition testimony about his communications with Gulf and/or Cumberland "in connection with their inducement of the breach of contract which forms the basis" of their five causes of action in this case for tortious interference. Although defendants' counsel now represents Gulf and Cumberland, there is no evidence that he represented them at any time prior to this litigation, including at the time of the events alleged in the complaint, the period as to which plaintiffs seeks discovery.
Counsel did not respond to the subpoena. In December 2016, plaintiffs, claiming that defendants had failed to comply with discovery, moved to strike defendants' answer pursuant to CPLR 3126. Defendants opposed the motion, and defendants' counsel cross-moved for a protective order to quash the subpoena served on him. The motion court denied plaintiffs' motion and granted the cross motion.
Analysis
We find that the motion court properly quashed the subpoena to the extent that it sought documents [FN1]. We further find that the motion court should not have granted counsel's request for a protective order prohibiting his deposition, and that the matter should be remanded for further proceedings on that issue. If, after further proceedings, the motion court denies counsel's request for a protective order, the deposition should proceed without prejudice to counsel's objection to specific questions the answers to which would reveal privileged or otherwise protected information (CPLR 3101). Unlike the motion court, we reach those conclusions based on state law rather than federal law. Finally, we find that the motion court properly denied plaintiffs' motion.
CPLR 3101(a) requires "full disclosure of all matter material and necessary in the prosecution or defense of an action." While trial courts "undoubtedly possess a wide discretion to decide whether information sought is material and necessary' to the prosecution or defense of an action," such discretion is not unlimited (Allen v Crowell- Collier Pub. Co., 21 NY2d 403, 406 [1968]), and disclosure is required where it will "assist preparation for trial by sharpening the issues and reducing delay and prolixity" (id.).
At the same time, the CPLR protects from discovery attorney work product, and, when affirmatively raised as it is here, privileged communications (CPLR 3101[b], [c]), and permits a court to issue a protective order "denying, limiting, conditioning or regulating the use of any disclosure device" where necessary "to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts" (CPLR 3103[a]).
An individual or entity who seeks a protective order bears the initial burden to show either that the discovery sought is irrelevant or that it is obvious the process will not lead to legitimate discovery. Once this burden is met, the subpoenaing party must "establish that the discovery sought is material and necessary' to the prosecution or defense of an action, i.e., that it is relevant" (Matter of Kapon v Koch, 23 NY3d 32, 34 [2014]; see also Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 377 [1991]). When the individual seeking a protective order asserts attorney work product and/or privilege, "the burden of establishing any right to protection is on the party asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity" (Spectrum Sys., 78 NY2d at 377).
Shelton v American Motors Corp.
In deciding the motion to quash, the motion court relied exclusively on Shelton v American Motors Corp. (805 F2d 1323 [8th Cir 1986]), and three New York trial court decisions which rely on Shelton [FN2]. For the reasons discussed below, we hold that Shelton is inconsistent [*3]with New York law.
Shelton was a wrongful death action in which the plaintiffs sought to depose the defendant's in-house counsel, who had assisted in the litigation. When counsel refused to answer certain questions at her deposition, citing attorney work product and attorney-client privilege, the District Court granted the plaintiffs's motion seeking a default judgment as a sanction. On appeal, the Eighth Circuit held that, while opposing counsel are not immune from being deposed, the practice should be limited to circumstances in which the party seeking the deposition shows that: (1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is "crucial" to preparation of the case (id. at 1327).
However, the test articulated in Shelton is not consistent with New York State law. As discussed above, under New York law, the individual or entity seeking a protective order bears the initial burden to show that the information sought is irrelevant or that the process will not lead to legitimate discovery, and only then does the burden shift to the subpoenaing party to demonstrate that the information sought is material and necessary (Kapon, 23 NY3d at 34). In contrast, Shelton places the initial burden on the party seeking disclosure (Shelton, 805 F2d at 1326-1327). Accordingly, New York courts may not properly apply the test articulated in Shelton.
Plaintiffs' Subpoena of Documents from Counsel
Applying New York law, the protective order was properly granted to the extent that it sought documents from defendants' counsel. Counsel met his initial burden to show that the retainer, rental and lease agreements sought are not relevant to plaintiffs' claims, and plaintiffs failed to demonstrate that they are "material and necessary" (Kapon at 34)[FN3]. Counsel also asserted in the motion court that the balance of the documents sought from him have already been produced to plaintiffs in this litigation and/or in the Go Green litigation. Plaintiffs did not dispute that they had received these documents, but merely speculated that counsel might produce a slightly different version. Accordingly, plaintiffs failed to demonstrate that counsel's duplicative production of these documents is necessary to their prosecution of this action (id.).
Deposition of Opposing Counsel
Neither this Court nor the Court of Appeals has established a clear rule for determining a motion to quash a deposition notice served on opposing counsel. As demonstrated by the paucity of cases on point, the practice appears to be appropriately rare.
Any such rule must take into account that depositions of opposing counsel are disfavored for three reasons. First, the "practice of attorneys deposing their adversaries hardly seems calculated to assist preparation for trial by sharpening the issues and reducing delay and prolixity'" (Equitable Life Assur. Socy. of U.S. v Rocanova, 207 AD2d 294, 296 [1st Dept 1994], quoting Allen, 21 NY2d at 406). Second, "the practice of calling opposing counsel as a witness at trial is [] offensive to our conception of the adversarial process" (Giannicos v Bellevue Hosp. Med. Center, 7 Misc 3d at 406-407). Third, the practice of deposing opposing counsel raises at least the possibility of attorney disqualification. This "implicates not only the ethics of the profession but also the substantive rights of the litigants" (S & S Hotel Ventures Ltd. Partnership v 777 S.H. Corp., 69 NY2d 437, 443 [1987]), including the right to counsel of one's choosing and the potential that the proceedings can become "stall[ed] and derail[ed]" (id.).
The Appellate Division, Second Department, has required the party who seeks to depose opposing counsel, in addition to showing that the information sought is material and necessary, to demonstrate "a good faith basis" (see Matter of Winston, 238 AD2d 345, 346 [2d Dept 1997]; Byoung Sool Kim v Cho Ho Bae, 198 AD2d 206 [2d Dept 1993]; Frybergh v Kouffman, 119 AD2d 541 [2d Dept 1986]). We now adopt the factor required by the Second Department. In addition to showing that the information sought is material and necessary, the subpoenaing party must demonstrate good cause, in order to rule out the possibility that the deposition is sought as a tactic intended solely to disqualify counsel or for some other illegitimate purpose.
However, our analysis of the mischief that can be caused by noticing the deposition of an attorney who has appeared in the litigation leads us to add another factor. The Court of Appeals has stated the general rule that a party need not show that information sought from a nonparty is unavailable elsewhere (Kapon, 23 NY3d at 38). However, in so ruling, the Court of Appeals did not address the special situation where a party is seeking discovery from opposing counsel, and it did not overrule our holding in Equitable Life Assur. Socy. Of U.S. v Rocanova (207 AD2d at 296 [internal quotation marks omitted]), that communications with counsel are immune from disclosure absent a "showing of necessity." Therefore, in the unusual situation where a party seeks to depose opposing counsel, we hold that the party seeking the deposition must show that the deposition is necessary because the information is not available from another source.
Here, defendants' counsel sought a protective order prohibiting his deposition on three bases, which arguably meet his prima facie burden to demonstrate that the information sought is irrelevant or that deposing him will not lead to legitimate discovery (Kapon, 23 NY3d at 34). First, he argued that plaintiffs' true intention in seeking to depose him is to attempt to disqualify him under the advocate-witness rule (Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.7[a]). Plaintiffs counter that whether counsel is precluded from representing defendants cannot be determined until his role in negotiating the rebranding of the stations is established. As discussed above, deposing opposing counsel raises at least the possibility of attorney disqualification. Accordingly, courts should scrutinize a request to depose a party's counsel to ensure that the value of the information that may be obtained is worth the substantial costs associated with disqualification.
Second, defendants' counsel asserts that nothing to which he could testify would be relevant to determining whether Cumberland or Gulf acted with tortious intent. Counsel has met his prima facie burden to show that the information sought is not relevant, particularly since the subpoena itself and plaintiffs' counsel's affirmation in opposition to the motion for a protective order are somewhat vague about what information they intend to elicit from counsel. In considering this on remand, it is worth noting that we have previously stated, in dicta, that an attorney who did not appear in the litigation, but was previously "involved as agent or negotiator in a commercial venture which gives rise to litigation, may properly be deposed regarding his knowledge of factual issues concerning the underlying transaction" (ACWOO Intl. Steel Corp. v Frenkel & Co., 165 AD2d 752, 753 [1st Dept 1990, citing Slabakis v Drizin, 107 AD2d 45 [1st Dept 1985]; see also 305-7 W. 128th St. Corp. v Gold, 178 AD2d 251 [1st Dept 1991]).
Finally, defendants' counsel argued that any deposition questions posed to him about the rebranding of the stations would involve privileged communications with Anjon, which are protected from discovery (CPLR 3101[b]). As plaintiffs note, the Court of Appeals has instructed in dicta that
"the assertion that the contemplated testimony is subject to a privilege will not usually justify quashing the subpoena. In that event, litigation must await such time as when the witness refuses to answer the question on the ground that privileged information is concerned and an attempt is made to compel a response" (Matter of Beach v Shanley, 62 NY2d 241, 248 [1984] [internal citations omitted] [grand jury subpoena served on journalist properly quashed under New York's Shield Law where only testimony sought was identification of a source]).
Moreover, as discussed above, the court must narrowly construe a request for protection of privileged information, and apply the protection consistent with the underlying purposes of the immunity from disclosure (Spectrum Sys., 78 NY2d at 377). In Spectrum Sys., a case dealing with production of a report prepared by outside counsel, the Court of Appeals noted that the invocation of privilege should "not be used as a device to shield discoverable information" (id. at 379).[FN4]
Therefore, defendants' counsel has made a prima facie showing that the material sought is irrelevant and/or that the process is not calculated to lead to legitimate discovery, whether because the information sought is privileged or because the true purpose of the subpoena is solely to disqualify him. However, since the parties and the motion court were proceeding under Shelton, it was not clear to plaintiffs that they had the burden to demonstrate that what they seek from defendants' counsel is material and relevant (Kapon, 23 NY3d at 34). Moreover, they did not have an opportunity to show that they met the two criteria that we establish today.
Accordingly, we remand this matter to the motion court for further proceedings to determine whether plaintiffs have shown that the information they seek in deposing defendants' counsel is material and necessary (Kapon, 23 NY3d at 34), that they have a good faith basis for seeking it (see Matter of Winston, 238 AD2d at 346), and that the information is not available from another source. Should the motion court allow the deposition to proceed, it should be without prejudice to counsel's objection to specific questions to the extent that the answers would reveal information that is privileged or otherwise protected from discovery (CPLR 3101).
Plaintiffs' Motion
The motion court did not improvidently exercise its discretion in denying plaintiffs' motion to strike defendants' answers pursuant to CPLR 3126 (see Robiou v City of New York, 89 AD3d 587, 588 [1st Dept 2011]). The motion court was within its discretion to find that defendants' conduct was not wilful, in that the delay was primarily caused by an unrelated business transaction (see Roman v City of New York, 38 AD3d 442, 443 [1st Dept 2007]). In addition, the motion court found no prejudice, which plaintiffs do not dispute (see Curiel v Loews Cineplex Theaters, Inc., 68 AD3d 415, 415-416 [1st Dept 2009]), and defendants' claim may be meritorious (see Windsor Owners Corp. v Mazzocchi, 110 AD3d 506 [1st Dept 2013]).
All concur except Singh, J. who
concurs in a memorandum as follows:




SINGH, J. (concurring)


Although I concur in remanding the matter to the motion court with regard to the [*4]deposition of defendants' counsel, I write separately because I believe that this matter should be remanded specifically on the issue of defendants' attorney's role, if any, prior to his representation of Cumberland and Gulf Oil with respect to the issue of debranding [FN1] from Mobil to Gulf. I also disagree with the new test adopted by the majority relating to attorney depositions.
I agree with the majority that the test articulated in Shelton v American Motors Corp. (805 F2d 1323 [8th Cir 1986]) is inconsistent with New York law. As the majority astutely articulates, Shelton impermissibly places the initial burden on the party seeking disclosure, whereas in New York this initial burden is placed on the individual or entity seeking a protective order (see Matter of Kapon v Koch, 23 NY3d 32, 34 [2014]). However, I also believe that Shelton is inconsistent with New York law because it requires the party seeking disclosure to show that no other means exist to obtain the information (Shelton, 805 F2d at 1327). Although the Court of Appeals in Kapon did not address whether a party may appropriately seek discovery from opposing counsel, it did reject a requirement that a party seeking discovery from a nonparty demonstrate that the material cannot be obtained elsewhere (Kapon, 23 NY3d at 38; see also Smile Train, Inc. v Ferris Consulting Corp., 117 AD3d 629, 631 [1st Dept 2014]).
Next, I believe that the threshold issue, which is unresolved on this record, is whether defendants' attorney acted as a negotiator when he represented Anjon and allegedly communicated with Cumberland and Gulf Oil regarding debranding from Mobil to Gulf stations. It bears emphasizing that at the time of the debranding, Anjon's counsel did not represent Cumberland and Gulf Oil. In his affirmation in support of a protective order barring his deposition, counsel makes a conclusory assertion that any deposition testimony would inevitably overlap with his privileged communications with his client Anjon. Although raised below, Supreme Court erred in failing to address this issue.
Section 4503 of the CPLR protects from disclosure "confidential communication[s] made between the attorney . . . and the client in the course of professional employment." In order to be protected by the attorney-client privilege, the document in question must (i) reflect a communication between the attorney and the client, (ii) be made and retained in confidence, and (iii) be made principally to assist in obtaining or providing legal advice or services for the client (see People v Osorio, 75 NY2d 80, 84 [1989]; Matter of Grand Jury Subpoena [Bekins Record Stor. Co.], 62 NY2d 324, 329 [1984]).
Attorney-client privileged matter shall not be obtainable and is "absolutely immune from discovery" if an objection is raised by one entitled to assert the privilege (CPLR 3101[b]; Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 376 [1991]). However, "[t]he attorney-client privilege requires some showing that the subject information was disclosed in a confidential communication to an attorney for the purpose of obtaining legal advice" (Coastal Oil N.Y. v Peck, 184 AD2d 241, 241 [1st Dept 1992] citing e.g. Matter of Priest v Hennessy, 51 NY2d 62, 68-69 [1980]; CPLR 4503[a]).
The privilege is an "obstacle to the truth-finding process"; thus, the statute should be strictly construed, and invoked cautiously, when its application is consistent with its purpose of ensuring that a client can confide fully and freely in its attorney, secure in the knowledge that its confidences will not later be exposed to the public, to its embarrassment or legal detriment (Priest, 51 NY2d at 68; see Spectrum Sys. Intl. Corp., 78 NY2d at 377).
"[T]he burden of establishing any right to protection is on the party asserting it" (Spectrum Sys. Intl. Corp., 78 NY2d at 377). Conclusory assertions of privilege will not suffice, [*5]and "[t]he court should not accept a mere assertion by counsel that specific information fits within the privilege" (Miranda v Miranda, 184 AD2d 286, 286 [1st Dept 1992]; see also Coastal Oil N.Y. v Peck, 184 AD2d at 241)).
The privilege does not apply when an attorney acts as a negotiator or an agent. In 305-7 W. 128th St. Corp. v Gold (178 AD2d 251 [1st Dept 1991]), the plaintiff sought the deposition of the defendant's assistant general counsel because she negotiated the lease and had firsthand knowledge of the facts and circumstances surrounding the transaction. In reversing Supreme Court's holding denying the plaintiff's motion to compel the examination, we held that "it is well settled that an attorney who functions as an agent or negotiator in a commercial venture may be [deposed]" (id. at 251). Thus, where the communications "concern both the business and legal aspects of ... ongoing negotiations ... with respect to the business transaction out of which the underlying lawsuit ultimately arose," and are not primarily of a legal character, but "express[] substantial non legal concerns," the privilege does not apply (Cooper-Rutter Assoc. v Anchor Natl. Life Ins. Co., 168 AD2d 663, 663 [2d Dept 1990]; see also North State Autobahn, Inc. v Progressive Ins. Group, 84 AD3d 1329 [2d Dept 2011]).
Accordingly, in the event Supreme Court finds that defendants' attorney acted in his capacity as an agent or negotiator on a commercial transaction relating to the debranding of the gas stations, he should be deposed. Of course, at such a deposition, defendants' counsel may assert attorney-client privilege with respect to confidential legal communications with Anjon.
Finally, I disagree with the majority's implementation of a new test in determining whether a party may depose opposing counsel. The Court of Appeals in Kapon already requires that a subpoenaing party establish that the "discovery sought is material and necessary to the prosecution or defense of an action" (Kapon, 23 NY3d at 34). Applying the Kapon standard, we held in China Privatization Fund (Del.), L.P. v Galaxy Entertainment Group Ltd. (139 AD3d 449, 449 [1st Dept 2016]) that the deposition of the opposing party's former deal counsel was proper because he possessed information that was " material and necessary' to the prosecution and defense of the action."
Additionally, we have emphasized that the "practice of attorneys deposing their adversaries hardly seems calculated to assist preparation for trial by sharpening the issues and reducing delay and prolixity. Absent a showing of necessity in unusual circumstances, the communications between a witness and an attorney are immune from disclosure" (Equitable Life Assur. Socy. of U.S. v Rocanova, 207 AD2d 294, 296 [1st Dept 1994] [internal quotation marks and citation omitted]).
I believe that the well developed body of law addressing the rare circumstances under which attorney discovery may be obtained sufficiently addresses the majority's valid concern over any mischief that can be caused by noticing a deposition of opposing counsel.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 2, 2018
CLERK



Footnotes

Footnote 1:Contrary to plaintiffs' argument, the cross motion for a protective order was timely, as CPLR 3103(a) permits any litigant to request a protective order as to any aspect of discovery "at any time." 

Footnote 2: The motion court cited Dufresne—Simmons v Wingate, Russotti & Shapiro, LLP (53 Misc 3d 598, 606—607 [Sup Ct, Bronx County 2016]), Stevens v Cahill (50 Misc 3d 918, 922 [Sur Ct, NY County 2015]), and Q.C. v L.C. (47 Misc 3d 600, 602—603 [Sup Ct, Westchester County 2015]). Two other trial courts have also adopted Shelton (Matter of Cavallo, 20 Misc 3d 219, 222 [Sur Ct, Richmond County 2008], affd 66 AD3d 675 [2d Dept 2009]; Giannicos v Bellevue Hosp. Med. Ctr., 7 Misc 3d 403, 407 [Sup Ct, NY County 2005]). The Second Department affirmed the result in Cavallo based on New York State case law holding that a nonparty subpoena requires a showing that the information cannot be obtained from any other source. As discussed below, the Court of Appeals has since rejected this line of cases (Kapon, 23 NY3d at 32).

Footnote 3:Plaintiffs argued before the motion court that the identity of the party paying defendants' counsel fees is relevant because Gulf's witness in the Go Green litigation testified that Anjon promised to indemnify Gulf in order to allay Gulf's fears that supplying gas to the stations might constitute tortious interference. However, the retainer agreements will not establish that Anjon has indemnified Gulf, much less its motive in doing so if it has, and they will not reveal who pays defendants' counsel fees. Moreover, defendants' counsel states that the supply contracts between the stations and Anjon, not included in the record before us, were previously produced to plaintiffs, and that they expressly reference indemnification. 

Footnote 4:This concern was shared by the dissenting judge in Shelton, who urged that asserting the attorney-client and work product privileges to frustrate discovery is contrary to the goals of a process "geared toward a search for the truth" (Shelton, 805 F2d at 1331 [Battey, J., dissenting]), and noted that "the structure of a large corporation such as AMC provides a unique opportunity to hide matters otherwise discoverable" (id. at 1332).

Footnote 1:Plaintiffs assert that debranding is the practice of abandoning a particular brand of gasoline sold by a service station and either adopting unbranded or a new brand of gasoline. In this case, it is alleged that the five stations began to supply motorists with Gulf motor fuel purchased from Anjon instead of Mobil fuel purchased from plaintiffs. The circumstances surrounding the alleged debranding forms a basis of plaintiffs' claim for tortious interference.