OPINION OF THE COURT
Kaye, J.
In an action to recover fees for consulting services, Spectrum Systems International Corporation demanded that defendant, Chemical Bank, produce certain documents pertaining to the bank’s internal investigation of possible fraud by employees and vendors, including Spectrum. Chemical responded by seeking a protective order, asserting that the documents were protected from disclosure by the attorney-client privilege, by the attorney work product doctrine, and as material *375 prepared in anticipation of litigation. This appeal requires us to consider whether a report prepared by Chemical’s specially retained outside counsel is privileged and therefore immune from discovery.
I.
The facts are simply stated. Spectrum is a computer software consulting firm that provided services to Chemical Bank until the spring of 1987. According to the affidavit of a partner in the New York City law firm of Schulte Roth & Zabel, in June 1987 Chemical’s general counsel retained the firm to perform an investigation and render legal advice to Chemical regarding possible fraud by its employees and outside vendors, and to counsel Chemical with respect to litigation options. According to the affidavits of Spectrum, Chemical’s own investigation began even earlier. Over the next months, Schulte Roth conducted interviews of Chemical employees, of a former officer responsible for the bank’s arrangements with Spectrum, and of representatives of Spectrum itself.
In a letter report dated August 20, 1987, signed by John S. Martin, Jr., then a partner, the law firm summarized the results of its investigation. After three pages of narrative regarding the central problem and the facts bearing on it, the final paragraph of the Spectrum section sets forth the law firm’s opinion as to a possible claim against Spectrum, an estimate of Chemical’s damages, a potential weakness if such a claim were to be asserted, and the firm’s view that there was insufficient proof to establish particular matters described in the letter. The report was addressed to Chemical’s vice-chairman — the company’s senior legal officer — with copies to Chemical’s general counsel and senior auditor.
Spectrum commenced the present action in October 1988, seeking $33,600 in fees, and Chemical counterclaimed for damages of at least $100,000 on the ground that Spectrum had falsified invoices and overcharged the bank.
After the close of pleadings, and before any other discovery, Spectrum demanded that Chemical turn over "[a] report and/ or notes or written documents of investigation conducted by or on behalf of Chemical Bank of the business relationship between Chemical Bank and vendors.” Spectrum’s president had been told of the investigation by Chemical’s former employee, and had himself been questioned in July 1987 by a *376 Chemical investigator and again in August by the law firm, where he appeared with his counsel. Apparently, the Chemical investigator made a memorandum regarding his conversation with Spectrum’s president, as did a Schulte Roth attorney of the later interview.
In response to Chemical’s motion for a protective order, Supreme Court — without examining the documents — ordered them produced, holding that "an independent investigation cannot obtain privileged status merely because it may have been communicated to an attorney.” The court subsequently denied Chemical’s motion for reargument or for an in camera inspection of the documents in issue.
While agreeing that Chemical’s motion for a protective order should be denied — the documents were not privileged, work product or material prepared in anticipation of litigation —the Appellate Division, having itself reviewed the documents, modified Supreme Court’s orders and granted Chemical’s alternative request for remittal for an in camera inspection to determine materiality and necessity (CPLR 3101 [a]). The Appellate Division, further, granted leave to appeal to this Court, certifying the following question: "Was the order of this Court, which modified the orders of the Supreme Court, properly made?”
We now answer the certified question in the negative, concluding that the Appellate Division erred in denying Chemical’s claim of privilege with respect to the Spectrum section of the Schulte Roth report — the only portion of the report in issue on this appeal.
II.
The CPLR directs that there shall be "full disclosure of all evidence material and necessary in the prosecution or defense of an action.” (CPLR 3101 [a].) "The test is one of usefulness and reason.” (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406.) This statute embodies the policy determination that liberal discovery encourages fair and effective resolution of disputes on the merits, minimizing the possibility for ambush and unfair surprise (see, 3A Weinstein-Korn-Miller, NY Civ Prac ¶¶ 3101.01-3101.03).
By the same token, the CPLR establishes three categories of protected materials, also supported by policy considerations: privileged matter, absolutely immune from discovery (CPLR 3101 [b]); attorney’s work product, also absolutely immune *377 (CPLR 3101 [c]); and trial preparation materials, which are subject to disclosure only on a showing of substantial need and undue hardship in obtaining the substantial equivalent of the materials by other means (CPLR 3101 [d] [2]).
Obvious tension exists between the policy favoring full disclosure and the policy permitting parties to withhold relevant evidence. Consequently, the burden of establishing any right to protection is on the party asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity (Matter of Priest v Hennessy, 51 NY2d 62, 69; Matter of Jacqueline F., 47 NY2d 215, 218-219; Koump v Smith, 25 NY2d 287, 294; see generally, Note, The Attorney-Client Privilege and the Corporate Client: Where Do We Go After Upjohn?, 81 Mich L Rev 665 [1983]).
Against this backdrop, we consider Chemical’s claims for a protective order.
III.
The attorney-client privilege, the oldest among common-law evidentiary privileges (8 Wigmore, Evidence § 2290 [McNaughton rev 1961]; Upjohn Co. v United States, 449 US 383, 389), fosters the open dialogue between lawyer and client that is deemed essential to effective representation (see, Matter of Vanderbilt [Rosner — Hickey], 57 NY2d 66, 76; Matter of Priest v Hennessy, 51 NY2d 62, 67-68, supra).
A century ago this Court referred to the attorney-client privilege statute as a "mere re-enactment of the common-law rule” (Hurlburt v Hurlburt, 128 NY 420, 424); reliance on the common law continues to this day. CPLR 4503 (a) states that a privilege exists for confidential communications made between attorney and client in the course of professional employment, and CPLR 3101 (b) vests privileged matter with absolute immunity. For definition of what is encompassed by the privilege, courts still must look to the common law (see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C310L25, at 37).
Although typically arising in the context of a client’s communication to an attorney, the privilege extends as well to communications from attorney to client. The privilege is of course limited to communications — not underlying facts (Upjohn Co. v United States, 449 US, at 395-396, supra). In order for the privilege to apply, the communication from attorney to *378 client must be made "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship.” (Rossi v Blue Cross & Blue Shield, 73 NY2d 588, 593.) The communication itself must be primarily or predominantly of a legal character (id., at 594).
As is plain from mere statement of the principles, whether a particular document is or is not protected is necessarily a fact-specific determination (Rossi v Blue Cross & Blue Shield, 73 NY2d, at 592-593, supra), most often requiring in camera review.
Here, Spectrum does not challenge the confidential nature of the Schulte Roth report. Moreover, it is uncontested that the law firm was specially retained as outside counsel for the purpose of conducting an internal investigation into possible fraud on Chemical and rendering legal advice about that problem, including counseling about litigation options. Clearly the requisite professional relationship was established when Chemical retained the law firm to render legal assistance (Radiant Burners v American Gas Assn., 320 F2d 314, cert denied 375 US 929).
The report itself, after presenting facts, sets forth the firm’s assessment regarding a possible legal claim, its approximate size and weaknesses. As a confidential report from lawyer to client transmitted in the course of professional employment and conveying the lawyer’s assessment of the client’s legal position, the document has the earmarks of a privileged communication.
The arguments against privilege in this case center on Schulte Roth’s conceded investigative function, which led the Appellate Division to conclude that the report and other documents were not clearly communicated by counsel in the role of attorneys rendering legal advice. In the Appellate Division’s view, the report was aimed at assisting Chemical in its business operations, as by suggesting measures to prevent future corruption and terminate or discipline implicated employees. We disagree.
That nonprivileged information is included in an otherwise privileged lawyer’s communication to its client — while influencing whether the document would be protected in whole or only in part — does not destroy the immunity. In transmitting legal advice and furnishing legal services it will often be necessary for a lawyer to refer to nonprivileged matter (see, Code of Professional Responsibility EC 4-1 [lawyer should be fully informed of all facts]).
*379 As we made clear in Rossi, the privilege is not narrowly confined to the repetition of confidences that were supplied to the lawyer by the client (compare, Mead Data Cent. v United States Dept. of Air Force, 566 F2d 242, 254 [DC Cir]). That cramped view of the attorney-client privilege is at odds with the underlying policy of encouraging open communication; it poses inordinate practical difficulties in making surgical separations so as not to risk revealing client confidences; and it denies that an attorney can have any role in fact-gathering incident to the rendition of legal advice and services (see, In re LTV Sec. Litig., 89 FRD 595, 602; Wolfram, Modern Legal Ethics § 6.3.5 [Prac ed]). The memorandum in Rossi included the lawyer’s conversations with plaintiff’s counsel and with third parties as well as the lawyer’s opinion and advice. Yet we determined, from reviewing the full content and context of the communication, that its purpose was to convey legal advice to the client, and we held the entire document exempt from discovery. We reach that same conclusion here.
Both Supreme Court and the Appellate Division were properly concerned that the attorney-client privilege not be used as a device to shield discoverable information. As they correctly observed, an investigative report does not become privileged merely because it was sent to an attorney. Nor is such a report privileged merely because an investigation was conducted by an attorney; a lawyer’s communication is not cloaked with privilege when the lawyer is hired for business or personal advice, or to do the work of a nonlawyer (People v Belge, 59 AD2d 307, 308-309). Yet it is also the case that, while information received from third persons may not itself be privileged (see, Kenford Co. v County of Erie, 55 AD2d 466), a lawyer’s communication to a client that includes such information in its legal analysis and advice may stand on different footing. The critical inquiry is whether, viewing the lawyer’s communication in its full content and context, it was made in order to render legal advice or services to the client.
Here we conclude that facts were selected and presented in the Schulte Roth report as the foundation for the law firm’s legal advice, and that the communication was primarily and predominantly of a legal character. We reach this conclusion both from our review of the document and from the undisputed facts in the record. While a court is not bound by the conclusory characterizations of client or counsel that the retention was for the purpose of rendering legal advice, here *380 there is no reason to disregard the sworn statements describing the ¿ngagement as one for legal not business advice, which is evident in the report itself. The report offers no recommendations for desirable future business procedures or corruption prevention measures, or employee discipline — indeed, it reflects that the individuals involved in the challenged practices were no longer working for Chemical. Rather, the narration relates and integrates the facts with the law firm’s assessment of the client’s legal position, and evidences the lawyer’s motivation to convey legal advice.
The Appellate Division, in rejecting Chemical’s claim of privilege, additionally relied on the fact that the Schulte Roth report did not focus on any imminent litigation, that the report reflected no legal research, and that no conclusion was reached with regard to the parties’ legal position. None of these factors changes the privileged character of the document.
The prospect of litigation may be relevant to the subject of work product and trial preparation materials, but the attorney-client privilege is not tied to the contemplation of litigation (see, Root v Wright, 84 NY 72, 76; Bacon v Frisbie, 80 NY 394, 400). Legal advice is often sought, and rendered, precisely to avoid litigation, or facilitate compliance with the law, or simply to guide a client’s course of conduct. Proximity to litigation — as was the case in Rossi — may itself reveal that the motive in a lawyer’s communication was to give legal advice, but the absence of pending or prospective litigation does not otherwise bear on the privilege analysis.
That the Schulte Roth report was inconclusive, looking toward future discussion, is also without significance. Legal advice often begins — and may end — with a preliminary evaluation and a range of options. More than that may not be possible upon an initial investigation (see, State ex rel. Great Am. Ins. Co. v Smith, 574 SW2d 379, 385 [Mo]). Similarly, the absence of legal research in an attorney’s communication is not determinative of privilege, so long as the communication reflects the attorney’s professional skills and judgments. Legal advice may be grounded in experience as well as research.
Finally, we have several times noted that the privilege may give way to strong public policy considerations (see, Matter of Priest v Hennessy, 51 NY2d, at 67-68, supra). Surely this is not such an instance. Spectrum urges that disclosure would best serve the public interest, but Chemical underscores that it *381 does not seek to deny disclosure of facts gathered during the Schulte Roth investigation, only of its attorney’s expression of legal advice drawn on those facts. Spectrum has no right whatever to the production of this privileged communication, least of all on extraordinary public policy grounds.
Chemical argues, alternatively, that the Schulte Roth report is absolutely protected as attorney’s work product, in that it reflects its lawyer’s mental impressions and legal analysis (see, e.g., Hoffman v Ro-San Manor, 73 AD2d 207, 211). Whether or not privileged, a record may qualify in whole or in part as attorney work product, or even trial preparation materials. Our conclusion that the Schulte Roth report is privileged makes further inquiry along those lines unnecessary.
IV.
The Appellate Division further held that the disputed documents are not protected as work product or trial preparation materials, conclusions Chemical challenges.
We note, however, that no document other than the Schulte Roth report has been put before the Court, or described with any particularity, or analyzed by the parties in their argument to us. Chemical’s affidavits speak of memoranda of conversations with Spectrum’s president, its briefs mention unspecified investigative records, and the Appellate Division refers to Chemical documents labeled “Attorney Work Product.” A party’s own labels are obviously not determinative of work product, and the generalized descriptions — lacking identification of persons, time periods and circumstances — do not convey the information and analysis necessary to decide whether a particular document should be immunized from disclosure under CPLR 3101 (c) or (d). Chemical’s offer to deliver the remaining documents for our in camera review obviously does not fill this gap.
Determining document immunity claims, and reviewing them, are largely fact-specific processes (see, e.g., Rossi v Blue Cross & Blue Shield, 73 NY2d 588, supra; Matter of Grand Jury Subpoena [Bekins Record Stor. Co.], 62 NY2d 324). Indeed, we join in the observation of the Appellate Division that it would have been better practice for the trial court in this case, when first considering Chemical’s motion, to have conducted an in camera review "to have allowed for a more informed determination as to whether the information was indeed protected from disclosure” on any of the grounds *382 alleged. (157 AD2d 444, 447.) The present record, similarly, leaves us with inadequate basis for determining whether the Appellate Division correctly concluded that Chemical’s remaining documents were neither attorney’s work product nor trial preparation materials. We therefore do not reach these issues, or the additional arguments propounded by the parties and amici curiae regarding CPLR 3101 (c) and (d).
Accordingly, the order of the Appellate Division should be modified, with costs to defendant, in accordance with this opinion and, as so modified, affirmed. The certified question should be answered in the negative.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order modified, etc.