Matter of Appellate Advocates v New York State Dept. of Corr. & Community Supervision (2022 NY Slip Op 01354)





Matter of Appellate Advocates v New York State Dept. of Corr. & Community Supervision


2022 NY Slip Op 01354


Decided on March 3, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 3, 2022

531737
[*1]In the Matter of Appellate Advocates, Appellant,
v
New York State Department of Corrections and Community Supervision, Respondent.

Calendar Date:November 18, 2021

Before:Egan Jr., J.P. (vouched in), Lynch, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Lincoln Square Legal Services, Inc., New York City (Ron Lazebnik of counsel), for appellant.
Letitia James, Attorney General, Albany (Frank Brady of counsel), for respondent.
Civil Rights and Transparency Clinic, Buffalo (Michael F. Higgins of counsel), for Reinvent Albany and another, amici curiae.



Aarons, J.
Appeal from a judgment of the Supreme Court (Ryba, J.), entered June 26, 2020 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent partially denying petitioner's Freedom of Information Law request.
Petitioner made a request under the Freedom of Information Law (see Public Officer Law art 6) seeking documentation related to how the Board of Parole determined applications for parole release. As relevant here, petitioner sought from respondent "[a]ny and all records, documents, and files referencing or relating to Board of Parole training, including but not limited to training policies, procedures, manuals, handbooks, and outlines received or created by Board of Parole commissioners, their employees, staff members, and agents." In response, respondent provided some training materials but also withheld certain documents as protected by the attorney-client privilege. Petitioner administratively appealed and respondent, in support of withholding documents from disclosure, argued that the sought documents were protected as attorney-client communications. Respondent also relied on the intra-agency exemption. After the administrative appeal was denied, petitioner commenced this CPLR article 78 proceeding seeking full compliance with its Freedom of Information Law request. Before respondent joined issue, the parties reached a settlement as to the disclosure of some documents. Respondent then answered and submitted 11 documents to Supreme Court for an in camera review, along with a privilege log. Following the review, the court found that these 11 documents were exempt from disclosure. Petitioner appeals.
Petitioner argues that Supreme Court erred in determining that the documents at issue were exempt from disclosure under the attorney-client privilege. Having reviewed the documents that were submitted in camera, we disagree. "[T]he attorney-client privilege protects communications between an attorney and his or her client that convey facts relevant to a legal issue under consideration, even if the information contained in the communication is not privileged" (Matter of Gilbert v Office of the Governor of the State of N.Y., 170 AD3d 1404, 1405-1406 [2019]). Regarding the minor offenders memoranda, these documents, as noted in the affirmation of the Board's counsel, were created by counsel and contain legal advice to the Board regarding the state of law and how the Board should conduct interviews in accord with such law. The court-decisions handouts likewise provide counsel's summary, view and impression of recent case law to the Board. Similarly, the presentation slides and the parole interviews and decision-making handout discuss various legal standards and regulations and, as the Board's counsel noted, were provided to the Board so it could understand the requirements imposed by them and how it can comply with them. As to the remaining documents [*2]— handouts concerning Board interviews, sample decision language concerning departure from COMPAS and hypothetical Board decisions — they also involve legal advice as to how to reach decisions on parole matters so as to be in compliance with applicable regulations.
Because the record reflects that the sought documents were made "'for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship'" (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 378 [1991], quoting Rossi v Blue Cross & Blue Shield of Greater N.Y., 73 NY2d 588, 593 [1989]), Supreme Court did not err in finding that they were exempt from disclosure under the attorney-client privilege (see Matter of Gilbert v Office of the Governor of the State of N.Y., 170 AD3d at 1405-1406; Matter of Shooters Comm. on Political Educ. Inc. v Cuomo, 147 AD3d 1244, 1246 [2017]). In view of our determination, petitioner's remaining assertions are academic.
Egan Jr., J.P., and Reynolds Fitzgerald, J., concur.
Lynch, J. (concurring in part and dissenting in part).
I agree with the majority that the two "Minor Offenders" memoranda, as well as the documents entitled "Sample Decision Language Concerning Departure from COMPAS" and "Hypothetical Board Decisions," as set forth on the privilege log, are exempt from disclosure under the attorney-client privilege. I respectfully dissent from so much of the majority decision as pertains to the remaining documents and would find either that they should be released in their entirety under petitioner's Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]) request or released with potential redactions for confidential or exempt material.
The attorney-client privilege does not shield from disclosure every communication between an attorney and his or her client (see Matter of Priest v Hennessy, 51 NY2d 62, 69 [1980]). Rather, for the privilege to apply, the communication must be "confidential" (id. [internal quotation marks and citations omitted]; see Ambac Assur. Corp. v Countrywide Home Loans Inc., 27 NY3d 616, 623 [2016]), and made "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship" (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 377-378 [1991] [internal quotation marks and citation omitted]). As a general premise, the privilege is limited to "communications — not underlying facts" (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 377; see Niesig v Team I, 76 NY2d 363, 372 [1990]). That said, where an attorney's communication to a client "integrates the facts with the [attorney's] assessment of the client's legal position," the entire communication may be privileged (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 379-380; see Matter of Gilbert v Office of the Governor of the State of N.Y., 170 AD3d 1404, 1405-1406 [2019]).[FN1] Since the privilege creates an "obvious tension with the [*3]policy of this [s]tate favoring liberal discovery[,] . . . [and] constitutes an obstacle to the truth-finding process, it must be narrowly construed" (Ambac Assur. Corp. v Countrywide Home Loans Inc., 27 NY3d at 624 [internal quotation marks, brackets and citations omitted]).
As characterized by respondent's attorney in her affidavit submitted with the privilege log, the withheld documents consist of "training materials" prepared by counsel in conjunction with her responsibility to "provide legal counsel to the [Board of Parole] [c]ommissioners with respect to the statutory, regulatory, and decisional case law governing the conduct of parole hearings and the decision-making process." Consistent with that defined role, many of the documents contain sections that are devoted solely to informing the Board of Parole of its duly codified statutory and regulatory duties in rendering parole determinations, without any fact-specific discussions or legal advice on how to apply the law to particular scenarios. Although these documents were prepared by attorneys in the course of a professional relationship, the general legal principles outlined therein are not confidential (see Amadei v Nielsen, 2019 WL 8165492, *8, 2019 US Dist LEXIS 228817, *20 [ED NY, Apr. 17, 2019, No. 17-CV-5967 (NGG/VMS)] [upholding determination that training materials prepared by an attorney for the US Customs and Border Protection were not subject to the attorney-client privilege]; American Immigration Council v U.S. Dept. of Homeland Sec., 905 F Supp 2d 206, 222-223 [D DC 2012] [PowerPoint slides prepared by an attorney that were used to train US Citizenship and Immigration Services employees were not protected by the attorney-client privilege]; Hartford Life Ins. Co. v Bank of America Corp., 2007 WL 2398824, *6, 2007 US Dist LEXIS 61668, *16 [SD NY, Aug. 21, 2007, No. 06-Civ-3805 (LAK/HBP)] [a document prepared by an attorney was not protected by the attorney-client privilege where it "contain(ed) only generic descriptions of the law as it might apply to the securities industry," without "apply(ing) any of these generalized legal principles to specific factual situations"]; compare Valassis Communications, Inc. v News Corporation, 2018 WL 4489285, *3-4, 2018 US Dist LEXIS 160234, *10 [SD NY, Sept. 19, 2018, 17-CV-7378 (PKC)] [certain training materials prepared by an attorney that contained confidential communications conveying legal advice were privileged]).[FN2]
Nor, in my view, would FOIL's intra-agency exemption (see Public Officers Law § 87 [2] [g]) permit the withholding of the publicly-available information or factual data contained in such records. Indeed, the exemption does not apply to "objective information, in contrast to opinions, ideas or advice exchanged as part of the consultative or deliberative process of government decision[-]making" (Matter of Gould v New York City Police Dept., 89 NY2d 267, 276-277 [1996]).
After reviewing the withheld documents, I find that [*4]the document entitled "Board of Parole Interviews" — which is a checklist of materials to be brought to parole interviews, the factors that must be considered during the interviews and certain requirements that must be followed based upon whether an open date is granted or release is denied — contains no privileged or exempt material and should be disclosed in its entirety in accordance with petitioner's FOIL request (see generally Bloss v Ford Motor Co., 126 AD2d 804, 805 [1987]). The documents entitled "Favorable Court Decisions" and "Unfavorable Court Decisions" — each consisting of a packet of published court decisions without any legal advice or confidential information — should also be released in their entirety. I would also find that certain portions of the remaining documents — i.e., the PowerPoint slides entitled "BOP Interviews and Decisions," "Parole Interviews and Decision-Making" and "Parole Interviews and Decision-Making Under Revised Regulations," and the handout entitled "Parole Interviews and Decision Making" — which recite regulatory and statutory guidelines, should be released, subject to potential redactions for any confidential communications, fact-specific discussions or statements conveying ideas or advice exchanged as part of the consultative or deliberative process of decision-making (see e.g. Matter of Miller v New York State Dept. of Transp., 58 AD3d 981, 985 [2009], lv denied 12 NY3d 712 [2009]). As such, I would modify the judgment to the extent that these documents are not exempt from disclosure, subject to further review upon remittal as indicated for the PowerPoint slides and the "Parole Interviews and Decision Making" handout.
Pritzker, J. (concurring in part and dissenting in part).
At the outset, I agree with much of the majority's opinion, except to the conclusions reached as to the documents entitled "Board of Parole Interviews," "Sample Decision Language Concerning Departure from COMPAS" and "Hypothetical Board Decisions." To that end, I agree with my concurring/dissenting colleague, Justice Lynch, that the "Board of Parole Interviews" document was improperly withheld under the Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]). However, I write separately because, although I agree that two of the documents — the first of which is the fifth document in the privilege log and is described as a handout entitled "Sample Decision Language Concerning Departure from COMPAS" and the second of which is the ninth document in the privilege log and is described as a handout entitled "Hypothetical Board Decisions" — were permissibly withheld, I disagree with the majority because it is my opinion that the proper basis to withhold these documents is the intra-agency exemption, rather than the attorney-client privilege exemption.
In general, "under FOIL, agency records are presumptively available for public inspection, without regard to the need or purpose of the applicant, unless the requested [*5]documents fall within one of the exemptions set forth in Public Officers Law § 87 (2)" (Matter of Hearst Corp. v New York State Police, 109 AD3d 32, 24 [2013]). One such exemption pertains to certain records, or portions thereof, that "are specifically exempted from disclosure by state or federal statute" (Public Officers Law § 87 [2] [a]). I turn first to the "Board of Parole Interviews" handout, which the majority finds exempt under the attorney-client privilege. The attorney-client privilege, codified in CPLR 4503 (a), prohibits disclosure of "communications between attorneys and clients that are made for the purpose of obtaining or rendering legal advice in the course of a professional relationship" (Matter of Gilbert v Office of the Governor of the State of N.Y., 170 AD3d 1404, 1405 [2019]). The critical inquiry in determining whether the attorney-client privilege exemption to FOIL applies "'is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client'" (id. at 1405, quoting Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 379 [1991]), and the privilege is "limited to communications — not underlying facts" (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 377). "Given that 'the attorney-client privilege constitutes an obstacle to the truth-finding process,' its invocation 'should be cautiously observed to ensure that its application is consistent with its purpose'" (Wrubleski v Mary Imogene Bassett Hosp., 163 AD3d 1248, 1251 [2018], quoting Matter of Priest v Hennessy, 51 NY2d 62, 68 [1980]). The "Board of Parole Interviews" handout is a two-page document that provides a checklist for how the Board of Parole should conduct itself prior to the interview, what should be discussed during the interview and the decision-making process. It does not contain any privileged or exempt material and therefore does not fall within the attorney-client exemption (see CPLR 4503; Wrubleski v Mary Imogene Bassett Hosp., 163 AD3d at 1250; see generally Bloss v Ford Motor Co., 126 AD2d 804, 805 [1987]).
I turn now to the documents entitled "Sample Decision Language Concerning Departure from COMPAS" and "Hypothetical Board Decisions." Inter-agency or intra-agency materials may also be withheld from disclosure pursuant to a FOIL request as long as they are not, as relevant here, "statistical or factual tabulations or data," "instructions to staff that affect the public" or "final agency policy or determinations" (Public Officers Law § 87 [2] [g]). Similar to the attorney-client privilege, the purpose of the exemption for intra-agency material "is to foster 'the open exchange of ideas among government policymakers'" (Matter of Morgan v New York State Dept. of Envtl. Conservation, 9 AD3d 586, 587 [2004], quoting Ingram v Axelrod, 90 AD2d 568, 569 [1982]). Stated differently, the purpose of this exemption is "to protect the deliberative process of the government [*6]by ensuring that person[s] in an advisory role would be able to express their opinions freely to agency decision makers" (Matter of Moody's Corp. & Subsidiaries v New York State Dept. of Taxation & Fin., 141 AD3d 997, 1001-1002 [2016] [internal quotation marks, brackets and citations omitted]). "The exemption applies to records that are deliberative," for example, "communications exchanged for discussion purposes not constituting final policy decisions" (id. at 1001 [internal quotation marks and citations omitted]). "[T]he opinions and recommendations exchanged by agency personnel constitute predecisional material, prepared to assist an agency decision maker in arriving at his [or her] decision" (id. at 1002 [internal quotation marks, ellipsis and citation omitted]).
To that end, the "Sample Decision Language Concerning Departure from COMPAS" handout consists of three pages of information that provides template paragraphs that the Board of Parole may use in its decisions if departing from the COMPAS Risk and Needs Assessment Instrument. This document consists of 13 paragraphs, none of which provides instructions or advice on how and when to implement this decisional language. Instead, it simply provides sample language, as indicated in its title. As explained by Kathleen Kiley, counsel to the Board of Parole, COMPAS is "a standardized risk and needs assessment system used to evaluate and assess parole candidates." She averred that the "Sample Decision Language Concerning Departure from COMPAS" handout "provide[s] advice to [c]omissioners as to how to reach decisions that compl[y] with the statutes and regulations when their decision[s] depart[] from the recommendations of COMPAS." The "Hypothetical Board Decisions" document is similar in nature in that it presents template paragraphs for denying release. This document includes four sample paragraphs for denying release based on assessing various factors. Kiley asserts that this document "provide[s] legal advice as to how to draft parole decisions properly applying relevant statutes and regulations."
Given that neither of these documents includes legal standards and they are more akin to templates or checklists provided to staff (see Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 378), it is my opinion that they should not be withheld under the attorney-client exemption. Further, there is no indication that these documents contain confidential communications (see CPLR 4503; Wrubleski v Mary Imogene Basset Hosp., 163 AD3d at 1250-1251). The "Sample Language Concerning Departure from COMPAS" handout and "Hypothetical Board Decisions" handout are both factually, as opposed to legally, based (see Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 378; Rossi v Blue Cross & Blue Shield of Greater N.Y., 73 NY2d 588, 593 [1989]). They are similar to general training materials and, absent a further basis to withhold them, they would otherwise need to be disclosed in accordance with [*7]public policy (see Wrubleski v Mary Imogene Basset Hosp., 163 AD3d at 1250-1251; see also Amadei v Nielsen, 2019 WL 8165492, *8, 2019 US Dist LEXIS 228817, *20 [ED NY, Apr. 17, 2019, No. 17-CV-5967 (NGG/VMS)]; American Immigration Council v U.S. Dept. of Homeland Sec., 905 F Supp 2d 206, 222-223 [D DC 2012]; Hartford Life Ins. Co. v Bank of America Corp., 2007 WL 2398824, *6, 2007 US Dist LEXIS 61668, *16 [SD NY, Aug. 21, 2007, No. 06-Civ-3805 (LAK/HBP)]).
Nevertheless, it is my opinion that the documents were properly withheld under the intra-agency exemption. First, the "Sample Decision Language Concerning Departure from COMPAS" handout does not provide any instructions to staff; instead, sample language has been provided that guides the staff in how to appropriately depart from the COMPAS instrument. Therefore, as this constitutes predecisional material with the purpose of assisting respondent, this document was properly withheld under the intra-office exemption (see Public Officers Law § 87 [2] [g]; Matter of Moody's Corp. v New York State Dept. of Taxation & Fin., 141 AD3d at 1002). Similarly, the "Hypothetical Board Decisions" handout presents template paragraphs for denying release. There are no instructions provided, and the document is clearly predecisional. This document speaks to the policy underlying the intra- or inter-agency materials exemption — fostering an open exchange of ideas — and therefore was properly withheld from disclosure under this exemption (see Public Officers Law § 87 [2] [g]; Matter of Moody's Corp. v New York State Dept. of Taxation & Fin., 141 AD3d at 1002).
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: This rule forms the basis of my determination that the four documents noted above are privileged, as the facts contained therein are intertwined with counsel's advice and opinions.

Footnote 2: Because New York's FOIL statute "was modeled" after the federal Freedom of Information Act (see 5 USC § 552), New York courts "have repeatedly looked to federal precedent when interpreting FOIL" (Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d 217, 231 [2018]).