Matter of New York Civ. Liberties Union v New York State Off. of Ct. Admin. (2025 NY Slip Op 05784)

Matter of New York Civ. Liberties Union v New York State Off. of Ct. Admin.

2025 NY Slip Op 05784

Decided on October 21, 2025

Court of Appeals

Halligan

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 21, 2025

No. 74

[*1]In the Matter of New York Civil Liberties Union, Appellant,

v

New York State Office of Court Administration, Respondent, et al., Defendant.

Terry Ding, for appellant.

Robyn L. Rothman, for respondent.

Reporters Committee for Freedom of the Press, et al., The Legal Aid Society, et al., Cynthia Godsoe, et al., amici curiae.

HALLIGAN, J.

This case concerns a Freedom of Information Law (FOIL) request made by the New York Civil Liberties Union (NYCLU) to the Office of Court Administration (OCA). The request followed the leak of a 2021 internal OCA memorandum, which proposed a narrow reading of a recent court decision and had apparently been widely distributed to judges in the Unified Court System (UCS).

OCA asserts that NYCLU's request did not reasonably describe the records sought, and that any responsive materials would be subject to attorney-client privilege. On the first point, the parties now agree that an identifiable set of responsive documents exists and can be located by the agency, and NYCLU says that it wants nothing more. On the second point, OCA is not entitled to a blanket exemption for all potentially responsive documents based on a sweeping invocation of attorney-client privilege between its Counsel's Office and all UCS judges. We therefore conclude that the Appellate Division erred in dismissing the FOIL proceeding as to the identified subset of documents, based solely upon OCA's claim of a blanket attorney-client privilege exemption.

I.

In 2021, the First Department held in Crawford v Ally that due process requires an evidentiary hearing prior to issuance of certain temporary orders of protection (197 AD3d 27 [1st Dept 2021]). A memorandum discussing that [*2]ruling (the Crawford Memorandum), labeled "Confidential/Internal Use Only," was sent by OCA's Deputy Counsel of Criminal Justice to several Deputy Chief Administrative Judges. The memorandum later became public. In response to subsequent media inquiries concerning the memorandum, an OCA spokesperson stated that it was OCA's "normal practice" to "issue memos with context on cases that have potential significant operational impacts on the courts."

NYCLU then submitted a FOIL request to OCA, appending the Crawford Memorandum and seeking materials that would enable NYCLU to "better understand the breadth of the OCA's practice." The request, in relevant part, sought all documents "created by the OCA (including its Counsel's Office)" between 2011 and the response date, "distributed within OCA and/or to judges in the New York State Unified Court System," in which federal or state decisions, statutes, regulations, or ordinances are "summarized, analyzed, interpreted, construed, explained, clarified, and/or applied." The request noted that its use of the term "documents" encompassed "memoranda, directives, orders, instructions, guidance, policies, procedures, rules, regulations, and/or other statements."

OCA's Records Access Officer denied NYCLU's request on two grounds. The Officer determined that first, the request was overly broad and did not reasonably describe the records, and second, any responsive documents were exempt from disclosure as intra-agency materials and privileged as attorney-client communications and work product.

An administrative appeal followed. In the course of the appeal, NYCLU submitted a letter stating that "by way of further explanation, [the request] cover[ed] documents created by the OCA that contain instructions or guidance as to how judges should interpret and/or apply court decisions, statutes, regulations, or ordinances." NYCLU pointed to the Crawford Memorandum as "an example of the type of documents sought" and cited the OCA spokesperson's statement "indicating that such memoranda are commonly issued." The OCA Appeals Officer denied the appeal, determining that the request was not reasonably described, and asserting that any responsive documents were exempt from disclosure as intra-agency materials, as well as under the work-product and attorney-client privileges.

NYCLU then commenced this proceeding pursuant to CPLR article 78. Supreme Court granted the FOIL request in part, held that the request was sufficiently specific and that neither attorney-client nor work-product privilege applied, and ordered disclosure of all responsive documents (76 Misc 3d 1224[A], 2022 NY Slip Op 51041[U] [Sup Ct, NY County 2022]). The Appellate Division reversed, denied the petition, and dismissed the proceeding, holding that the request was overbroad, and alternatively that the records were exempt under the attorney-client and work-product privileges (224 AD3d 458 [1st Dept 2024]). We granted leave to appeal.

II.

FOIL makes "[a]ll government records . . . presumptively open for public inspection unless they fall within one of the enumerated exemptions of Public Officers Law § 87 (2)" (Matter of Gould v New York City Police Dept., 89 NY2d 267, 274-275 [1996]; see also Matter of Appellate Advocates v New York State Dept. of Corr. and Community Supervision, 40 NY3d 547, 551 [2023]). We review an agency's determination of a FOIL request for error of law (CPLR 7803 [3]), and "[j]udicial review of an administrative determination is limited to the grounds invoked by the agency" (Matter of Madeiros v New York State Educ. Dept., 30 NY3d 67, 74 [2017], quoting Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758 [1991]).

A party seeking documents pursuant to FOIL must "reasonably describe[]" the records it wants (Public Officers Law § 89 [3] [a]). When an agency denies a request for failure to satisfy this requirement (i.e., as overbroad), it has the burden of establishing "that the descriptions were insufficient for purposes of locating and identifying the documents sought" (Matter of Konigsberg v Coughlin, 68 NY2d 245, 249 [1986] [internal quotation marks omitted]).

Throughout this litigation, OCA has challenged whether NYCLU's request satisfied the requirement to "reasonably describe" the documents sought. At oral argument, though, the parties agreed that a set of responsive documents exists which have been reasonably described (tr at 25-26; 34-38; 50-51), and we agree with that conclusion. That set encompasses documents similar in substance to the Crawford Memorandum, circulated between Counsel's Office and UCS judges (tr at 25-27). We note OCA does not concede that NYCLU's request, either in its initial form or as clarified in the administrative appeal, is limited to that subset of documents. But OCA agreed at [*3]oral argument and in its briefing to the Appellate Division [FN1] that there is a subset of responsive documents which have been reasonably described.

At argument, NYCLU represented that they are not requesting any documents beyond this universe (tr at 53-55). Given this representation, no further dispute on this point appears to lie for our resolution. That group of responsive documents should be disclosed, unless exempt (see Public Officers Law § 89 [3] [a] [stating that an agency may grant or deny a FOIL request "in whole or in part"]; Matter of Reclaim the Records v New York State Dept. of Health, — NY3d —, 2025 NY Slip Op 03102 [2025] [requiring the agency to produce certain records that were not subject to an exemption, even though other requested records were exempted]).

III.

That brings us to the question of whether OCA is entitled to a blanket exemption, based on the attorney-client privilege, to production of any documents that fall within the narrowed request. In responding to a FOIL request, "[t]he burden is on the agency to establish that an exemption applies and, to that end, it must articulate a particularized and specific justification for denying access" (Matter of Reclaim the Records, 2025 NY Slip Op 03102, *4 [internal quotation marks omitted]). "To ensure maximum access to government documents, the exemptions are to be narrowly construed, with the burden resting on the agency to demonstrate that the requested material indeed qualifies for exemption" (Matter of Gould, 89 NY2d at 275 [internal quotation marks omitted]).

OCA relies on Public Officers Law § 87 (2) (a), which exempts records "specifically exempted from disclosure by state or federal statute," and CPLR 4503 (a) (1), which exempts confidential attorney-client communications (see also CPLR 3101 [b] ["Upon objection by a person entitled to assert the privilege, privileged matter shall not be obtainable."]).[FN2]

The attorney-client privilege "foster[s] uninhibited dialogue between lawyers and clients in their professional engagements, thereby ultimately promoting the administration of justice" (Rossi v Blue Cross and Blue Shield of Greater New York, 73 NY2d 588, 592 [1989]). The privilege is intended to ensure that "one seeking legal advice will be able to confide fully and freely in his attorney, secure in the knowledge that his confidences will not later be exposed to public view to his embarrassment or legal detriment" (Matter of Priest v Hennessy, 51 NY2d 62, 67-68 [1980]). Because the privilege "constitutes an obstacle to the truth-finding process," its scope is circumscribed by its purpose (Matter of Jacqueline F., 47 NY2d 215, 219 [1979] [internal quotation marks omitted]). It is "beyond dispute that no attorney-client privilege arises unless an attorney-client relationship has been established" (Matter of Priest, 51 NY2d at 68). And the privilege applies only when "the communication from attorney to client [is] made for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship" and "[t]he communication itself [is] primarily or predominantly of a legal character" (Matter of Appellate Advocates, 40 NY3d at 552, quoting Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 377-378 [1991]).

OCA claims a blanket attorney-client relationship with all judges in the UCS, and seeks to assert the privilege without any review of specific documents. But OCA has not demonstrated, on this record, an attorney-client relationship between Counsel's Office and all UCS judges. The case on which OCA primarily relies, Matter of Appellate Advocates, is distinguishable because the petitioner there did not dispute whether counsel to the Board of DOCCS had an attorney-client relationship with the Board (40 NY3d at 553-555).

The other cases on which OCA relies do not help, either. As with Matter of Appellate Advocates, they address whether particular documents are privileged where an attorney-client relationship has already been established or is [*4]not contested (see Spectrum, 78 NY2d at 378 ["Clearly the requisite professional relationship was established . . . ."]; Rossi, 73 NY2d at 591-593; Matter of Gilbert v Office of the Governor of the State of N.Y., 170 AD3d 1404, 1405 [3d Dept 2019]; Matter of Shooters Comm. on Political Educ., Inc. v Cuomo, 147 AD3d 1244, 1245-1247 [3d Dept 2017]).

Moreover, those cases involved claims of privilege as to particular, identified documents, not a sweeping claim of privilege applicable to a broad category of documents. Indeed, those cases illustrate the problem with OCA's sweeping claim here. We have explained that "whether a particular document is or is not protected is necessarily a fact-specific determination, most often requiring in camera review" (Spectrum, 78 NY2d at 378 [internal citation omitted]). Without having identified or produced any documents for in camera review, OCA cannot assert a blanket privilege over the entire universe of potentially responsive documents. In reaching this conclusion, we do not suggest that Counsel's Office could never establish such a relationship. But we decline to recognize the sweeping, ex ante privilege that OCA claims here.

We hold that OCA has failed to meet its preliminary burden of establishing an attorney-client relationship with all UCS judges. Should OCA continue to assert this privilege over any specific documents identified in response to the limited request upon which the parties have now agreed, the court on remittal should assess whether such documents fall within the asserted exemption, including by in camera review as necessary (see Matter of M. Farbman & Sons v New York City Health and Hosps. Corp., 62 NY2d 75, 83 [1984]).[FN3]

Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.

RIVERA, J. (dissenting in part):

Two legal tenets are central to this appeal. First, government records are presumptively open to the public under the Freedom of Information Law (FOIL) (Matter of Gould v New York City Police Dept., 89 NY2d 267, 274-275 [1996]). Second, statutory exemptions to disclosure are limited and narrowly interpreted because transparency and the public's right to know are the foundation of our democracy (see Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen, 69 NY2d 246, 252 [1987], citing Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979]). Petitioner, the New York Civil Liberties Union (NYCLU), requested documents under FOIL from the New York State Office of Court Administration (OCA), including OCA [*5]Counsel's Office's memoranda to Unified Court System (UCS) judges instructing them on the interpretation and application of the law in cases they preside over. OCA denied that request, asserting that the attorney-client privilege applied to all responsive records.

Contrary to OCA's claim, no such privilege encompasses the documents that NYCLU requested. No document that OCA Counsel's Office may have prepared to advise state judges in their adjudicatory capacity could implicate an attorney-client relationship with such judges. Each judge must, in their role as an unbiased adjudicator in a particular case, independently decide legal issues based on the applicable law, record of the proceedings, and the parties' arguments. A judge may not instead rely on a confidential OCA communication instructing them on how to apply the law or dispose of a case. Therefore, I agree with the majority that, for the agreed upon documents, "OCA has not demonstrated, on this record, an attorney-client relationship between Counsel's Office and all UCS judges" (majority op at 7), and that the Appellate Division's order should be reversed (majority op at 9). However, I do not agree that remittal for an in camera review of individual documents is warranted, because any possible claim of a nonexistent attorney-client privilege is meritless. I would therefore reverse and order that OCA disclose the documents without further delay.

***

"It is settled that FOIL is based on the overriding policy consideration that the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government" (Capital Newspapers, Div. of Hearst Corp., 69 NY2d at 252 [internal quotation marks omitted]). To foster public accountability and open government, FOIL makes "[a]ll government records . . . presumptively open for public inspection and copying unless they fall within one of the enumerated exemptions of Public Officers Law § 87 (2)" (Gould, 89 NY2d at 274-275). FOIL is "liberally construed and its exemptions narrowly interpreted to achieve its legislative purpose of maximizing public access to government records" (Matter of Appellate Advocates v New York State Dept. of Corr. & Community Supervision, 40 NY3d 547, 551 [2023] [internal quotation marks and citations omitted]).

"[J]udicial review of an administrative determination [of a FOIL request] is limited to the grounds invoked by the agency" (Matter of Madeiros v New York State Educ. Dept., 30 NY3d 67, 74 [2017], quoting Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758 [1991]). "If the reasons an agency relies on do not reasonably support its determination, the administrative order must be overturned and it cannot be affirmed on an alternative ground that would have been adequate if cited by the agency" (Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn. of the State of N.Y., 16 NY3d 360, 368 [2011]). An agency wishing to deny disclosure based on a FOIL exemption must do so expressly during the administrative process, and it cannot change its justification for the denial during the course of litigation (see Madeiros, 30 NY3d at 74 [rejecting the agency's reliance on a FOIL exemption in an article 78 proceeding because it failed to invoke that exemption when it originally denied the FOIL request]; see also Scherbyn, 77 NY2d at 758 [" '(A) reviewing court, in dealing with a determination which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis' "]).

On this appeal we are concerned only with OCA's invocation of the attorney-client privilege.[FN1] FOIL states that an "agency may deny access to records or portions thereof that . . . are specifically exempted from disclosure by state or federal statute" (Public Officers Law § 87 [2] [a]). In turn, CPLR 4503 (a) (1) codifies the attorney-client privilege and, accordingly, FOIL exempts from disclosure all documents protected by this privilege (see also CPLR 3101 [b] ["Upon objection by a person entitled to assert the privilege, privileged matter shall not be obtainable"]).

"The oldest among the common-law evidentiary privileges, the attorney-client privilege 'fosters the open dialogue between lawyer and client that is deemed essential to effective representation' " (Ambac Assur. Corp. v Countrywide Home Loans, Inc., 27 NY3d 616, 623 [2016], quoting Spectrum Sys. Intl. Corp. v Chem. Bank, 78 NY2d 371, 377 [1991]). The privilege is intended to "ensure that one seeking legal advice will be able to confide fully and freely in [their] attorney, secure in [*6]the knowledge that [their] confidences will not later be exposed to public view to [their] embarrassment or legal detriment" (Matter of Priest v Hennessy, 51 NY2d 62, 67-68 [1980]). However, "the attorney-client privilege constitutes an obstacle to the truth-finding process, [and its] invocation . . . should be cautiously observed to ensure that its application is consistent with its purpose" (id. at 68 [internal quotation marks omitted]).

For an attorney-client privilege to attach, the party asserting it must establish "that the communication at issue was between an attorney and a client 'for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship,' that the communication is predominantly of a legal character, that the communication was confidential and that the privilege was not waived" (Ambac Assur. Corp., 27 NY3d at 624, quoting Rossi v Blue Cross & Blue Shield of Greater N.Y., 73 NY2d 588, 593-594 [1989]). The party invoking the attorney-client privilege must also demonstrate the existence of an attorney-client relationship (see Priest, 51 NY2d at 68-69). "Such a relationship arises only when one contacts an attorney in [their] capacity as such for the purpose of obtaining legal advice or services" (id.). The party must prove "independent facts" that establish this relationship; an attorney's "mere statement that [a] party was a 'client' does not satisfy this burden" (id. at 70). Among the "independent facts" that could support a finding of an attorney-client relationship are a fee arrangement or payment, a retainer agreement, the attorney's appearance in a judicial proceeding on behalf of the client, or an oral conversation in which the client undertook representation (see e.g. Rand v Birbrower, Montalbano, Condon & Frank, P.C., 31 Fed Appx 748, 751 [2d Cir 2002]; Cooke v Laidlaw Adams & Peck, 126 AD2d 453, 455 [1st Dept 1987]).

As the majority explains, the parties' quarrel now centers on whether the attorney-client privilege protects from disclosure an agreed upon subset of NYCLU's broader document request. That subset "encompasses documents similar in substance to the Crawford Memorandum, circulated between Counsel's Office and UCS judges" (majority op at 5). The "Crawford Memorandum" refers to the OCA memorandum to UCS judges instructing them on how to apply the Appellate Division-mandated hearing first announced in Matter of Crawford v Ally (197 AD3d 27 [1st Dept 2021]).

I agree with the majority that OCA's invocation of the attorney-client privilege is without legal basis. When acting in their capacity as judicial officers, charged with adjudicating legal matters in the cases before them, UCS judges are not OCA's clients for the purposes of rendering legal advice. OCA cannot instruct a judge on the disposition of a petition, motion, pending action, or future litigation, because OCA Counsel's Office is not their legal advisor in such circumstances. OCA's communications in this vein are not confidences shared in furtherance of a fiduciary relationship initiated by the judge or advice on a legal subject of personal interest to the judge.[FN2]

OCA's reliance on Appellate Advocates to support its claim is misplaced. As the majority notes, in that case, the parties agreed that an attorney-client relationship existed (majority op at 7). Moreover, the concern weighing in favor of the privilege we identified—the benefits of "encouraging proactive compliance with the law"—applies to potential parties to a dispute, not to the adjudicator (Appellate Advocates, 40 NY3d at 553). Thus, the privilege cannot apply to UCS judges in their role as neutral arbiters of matters filed in the New York courts.

Our state judges' role as independent adjudicators with no personal stake in the outcome of cases is at odds with OCA's claim that these judges are its clients, even in their adjudicatory capacity. Because of their independence and neutrality, judges, when acting as adjudicators, may not consider confidential legal guidance from OCA intended to instruct them on how to resolve cases. Since a privilege "applies only where necessary to achieve its purpose" (i.e. to facilitate the provision of informed legal advice) (Fisher v United States, 425 US 391, 403 [1976]), the attorney-client privilege does not apply to guidance that OCA Counsel's Office issued to judges in their adjudicatory capacity.

OCA's privilege claim is also at odds with ethical considerations. Judges have a "duty to conduct [themselves] in such a manner as to inspire public confidence in the integrity, fair-mindedness and impartiality of the judiciary" (Matter of Esworthy, 77 NY2d 280, 282 [1991]). As amici legal scholars point out, OCA's confidential memoranda advising judges in their adjudicatory capacity undermine these values and present similar risks as ex parte communications, which New York bars with narrow exceptions (see 22 NYCRR 100.3 [B] [6]). The prohibition on ex parte communications promotes transparency and ensures that no party improperly benefits from or is disadvantaged [*7]by communications with the court for which not all parties are present. Like an ex parte communication, the Crawford Memorandum (along with other potential confidential guidance documents) denied criminal defense attorneys an opportunity to engage with and rebut OCA's interpretation of the law in their clients' cases. Additionally, as NYCLU argues, a judge adjudicating a case in which they are also a "client," whose sources of legal authority are secret due to privilege, could implicate Judiciary Law § 14. That provision states that "[a] judge shall not sit as such in, or take any part in the decision of, an action . . . in which [they are] interested . . . ."

OCA's failure to establish the necessary attorney-client relationship to invoke the privilege over the agreed upon subset of documents ends the matter. Therefore, we should reverse and order disclosure. The majority, however, remits to Supreme Court, concluding that if "OCA continue[s] to assert this privilege over any specific documents identified in response to the limited request upon which the parties have now agreed, the court on remittal should assess whether such documents fall within the asserted exemption, including by in camera review as necessary" (majority op at 8-9, citing Matter of M. Farbman & Sons v New York City Health and Hosps. Corp., 62 NY2d 75, 83 [1984]). There are several reasons why remittal is not only improper but also wasteful under the circumstances.

First, neither the parties nor Supreme Court deemed such review necessary, and our determination that OCA failed to establish an attorney-client relationship—as a matter of law—forecloses revisiting the question on a document-by-document basis. Second, while the majority is correct that a blanket assertion of an attorney-client privilege is generally inappropriate because determining whether a particular document is "protected is necessarily a fact-specific determination," (majority at 9, citing Spectrum, 78 NY2d at 378), here, OCA's assertion fails categorically. As the majority and I conclude, there is no attorney-client relationship—the sine qua non of the privilege—between OCA Counsel's Office and UCS judges as relates to the only documents at issue. Thus, by default, no attorney-client privilege could ever attach to the withheld materials. In camera review of individual documents will not change that reality.[FN3]

Although the majority suggests that upon remittal OCA could establish that some portion of the responsive documents is protected by attorney-client privilege, this proposition is unpersuasive. The documents, as defined, are those "circulated between OCA Counsel's Office and UCS judges" that are similar in substance to the Crawford Memorandum—in other words, documents drafted to instruct and guide UCS judges on how to interpret and apply the law (majority op at 5). As should be obvious, it is the intended purpose of the communication that controls the analysis—and advising judges on how to interpret and apply the law in matters before the judge is inconsistent with the attorney-client privilege.[FN4] Additionally, and contrary to the majority's view, because OCA asserted an attorney-client relationship with all UCS judges solely by nature of its status, OCA is limited to advancing that justification and no other for its purported attorney-client privilege upon remittal (see majority op at 9 n 3; see also Matter of Madeiros, 30 NY3d at 74, quoting Scherbyn, 77 NY2d at 758 [stating that judicial review of an administrative determination is limited to the grounds actually invoked by the agency, rather than to some alternative ground or post-hoc rationalization]).

To the extent the majority suggests that in the future the parties may dispute which documents are "potentially [*8]responsive" and fall within the defined subset of disclosable documents, such speculation is not grounds for remittal (majority op at 8). We do not know that such a dispute will develop, or that the parties will not resolve differences through good-faith negotiation now that we have declared that there is no attorney-client relationship between OCA and UCS judges based on unsolicited OCA legal advice on adjudicative matters. In any case, such disagreements would implicate enforcement of our decision, and thus should be properly addressed, if they arise, in the lower courts, and not through a preemptive remittal.[FN5]

In conclusion, OCA failed to establish an attorney-client relationship with UCS judges with respect to the subset of documents intended to instruct and guide them on how to interpret and apply the law to adjudicatory matters. Therefore, the subset of documents providing this information to UCS judges is not privileged, and OCA should disclose it without the delay of an unnecessary and futile exercise of individual document review. I dissent and would reverse, full stop.

Order reversed, with costs, and matter remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein. Opinion by Judge Halligan.

Judges Garcia, Singas, Cannataro, Troutman and Powers concur. Judge Rivera dissents in part in an opinion. Chief Judge Wilson took no part.

Decided October 21, 2025

Footnotes

Footnote 1: In its reply brief to the Appellate Division, OCA conceded that "NYCLU's clarifications to date do identify a subset of documents." Although contesting that NYCLU's administrative appeal letter constituted a clarification, OCA did not challenge NYCLU's assertion that a request may be clarified on administrative appeal. Any differences between NYCLU's description of its request in the administrative appeal and the article 78 proceeding are minimal, and thus, to the extent a subset of documents were reasonably described in the article 78 proceeding, they were reasonably described in the administrative appeal as well.

Footnote 2: We have no occasion to address OCA's assertions below of the attorney work-product privilege (see CPLR 3101 [c]) or the intra-agency exemption (see Public Officers Law § 87 [2] [g]) because OCA does not raise them before us.

Footnote 3: Contrary to the dissent's view, our determination that OCA may not invoke a blanket exemption based on its sweeping attorney-client privilege claim does not foreclose consideration of whether a viable attorney-client privilege can be asserted over any specific documents. Remittal is appropriate because OCA has not yet produced any responsive documents, and "whether a particular document is or is not protected is necessarily a fact-specific determination" (Spectrum, 78 NY2d at 378).

Footnote 1: OCA also invoked the intra-agency materials exemption and attorney work product privilege, both during the administrative appeal and in article 78 proceedings below, as justifications for denying NYCLU's request. However, it has abandoned those justifications before this Court.

Footnote 2: Petitioner NYCLU concedes that the privilege would apply to documents related to OCA Counsel's Office's advice or its representation of individual judges as named parties in litigation. I agree that OCA may invoke the attorney-client privilege in those circumstances.

Footnote 3: Indeed, courts may, in some circumstances, uphold a party's blanket claim of attorney-client privilege over a specific subset of documents where an attorney-client relationship has been established, where the court determines that the "withheld documents fall entirely within the scope of the asserted exemption," and where the agency articulates a "particularized and specific justification" for not disclosing the requested documents (see Gould, 89 NY2d at 275; cf. Matter of Lesher v Hynes, 19 NY3d 57, 66-67 [2012] [permitting, in certain instances, a law enforcement agency to make a "generic" determination that disclosure of certain categories of records would interfere with ongoing criminal proceedings under Public Officers Law § 87 (2) (e) (i) and may thus be withheld]). Here, OCA asserted the attorney-client privilege over an entire subset of documents based on the alleged attorney-client relationship between OCA and UCS judges. However, OCA failed at the first step to establish that relationship.

Footnote 4: This point is why no one disputes that a judge has formed an attorney-client relationship with counsel for the purpose of representing the judge on matters specific to that judge, as, for example, in the course of a lawsuit alleging bias.

Footnote 5: Notably, OCA cannot refuse to disclose an entire document because some portion may be exempt, but instead may redact the exempt material, further obviating the need for remittal to conduct some undefined in camera review (see Public Officers Law § 87 [2]).